EMIL MORTON et al., Respondents-Appellants, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim Nos. 32839 and 34235.)

Third Department, May 6, 1959.

*Louis J. Lefkowitz, Attorney-General* (*Paxton Blair* and *Julius L. Sackman* of counsel), for appellant-respondent.

*Bernard L. Bermant* for respondents-appellants.

REYNOLDS, J. Appeals by both the State and the claimants from judgments of the Court of Claims making awards in two appropriation cases, No. 32839 and No. 34235 and an appeal by the claimants from the denial by the same court of their motion to reconsider and correct its decision rendered therein.

Prior to the taking by the State the claimants owned a plot of land, shaped somewhat like a triangle, located at the southeast corner of the intersection of the then Horace Harding Boulevard and Lakeville Road. Its northerly boundary abutted on Horace Harding Boulevard and was over 1,500 feet in length and its westerly boundary abutted on Lakeville Road for about 970 feet and on the old Lakeville Road for about 67 feet. The appropriations made were for the construction of the Horace Harding Expressway Extension, the first takings occurring on October 3, 1953 when maps were filed in the Nassau County Clerk's office as to parcel 3A and parcel 5. Parcel 3A consisted of 10.122 acres which lay on the northerly boundary of the claimants' land. It ran the full length of the claimants' frontage along the old Horace Harding Boulevard and to a depth of about 245 feet. This land was to be used for the service road running along the south side of the new expressway and was taken in fee. Parcel 5 consisted of a strip of about 11 feet in width directly south of parcel 3A and amounted to .325 acres. As to this parcel a permanent easement was taken "for the purpose of constructing, reconstructing and maintaining thereon, excavations and slopes". These two parcels make up claim No. 32839.

On July 30, 1956 a map was filed in the Secretary of State's office covering parcel 187 and setting forth a temporary easement from August 1, 1956 to January 31, 1958, unless sooner terminated, over a plot at the northwest corner of claimants' land. This plot ran for 320 feet along Lakeville Road from the southwest corner of parcel 3A and 135 feet along the southerly

boundary of parcel 3A. The easement was for the purpose of constructing a highway detour during the construction of a bridge over Lakeville Road. The taking of this parcel constitutes claim No. 34235.

As to the appropriation of parcels 3A and 5 the court applied the "before and after" test, finding a fair market value of $191,000 before the taking and $87,400 after and allowing damages in the amount of $103,600. The court found that the claimants' remaining land had been denied the right of access to the service road, but that even if such a right existed it was subject to discontinuance in accordance with the permanent easement appropriated. Interest was suspended from April 3, 1954 to October 21, 1954. The court stated in connection with claimants' motion to reconsider that it had included in the award an amount for loss of access. As to parcel 187 the court held that the claimants were entitled to the fair rental value of the property taken for the temporary easement and for the loss of fair rental value of the remaining property from August 1, 1956 to April 1, 1957, which was the date of trial. Damages of $3,850 were awarded. Interest was subsequently suspended on both judgments from December 24, 1957 to May 2, 1958.

The State throughout has maintained that access to the highway has not been denied and no amount should have been included in the award for same, but otherwise that the award was neither excessive nor inadequate; that the award for the temporary easement was excessive, and that interest was properly suspended. The claimants contend that access had been denied them, that no amount was included in the consequential damages for this loss of access, that there is no support for the acreage value found and that interest was improperly suspended in both claims.

The first question to be considered is whether the appropriations by the State denied the claimants access to the highway on their northerly boundary. Before the taking their land abutted on a public highway and there is no question but that the right of access of an abutting owner is a valuable one. It seems clear that the Horace Harding Expressway Extension is a controlled access highway, but whether these owners whose land borders on a service road, as the remainder of the claimants' property does, are denied access thereto is not clear. However the court correctly held that in this case, because of the permanent easement, the right of access was denied claimants. (See *Spinner* v. *State of New York,* 4 A D 2d 987.) In *Spinner* (*supra*) a permanent easement was taken across the

front of claimant's property for "embankments and/or excavation." The court held that the State could have limited its rights under the easement to its then use but that: (p. 988) " If the State wishes to limit its rights under the easement to the continuance of the presently existing use or to the prospective use envisaged by its expert, it should do so by formal action, by deed, release or otherwise. In the absence of such modification, the damage must be evaluated on the basis of what the State has the right to do under the terms of the easement as appropriated (cf. *Dillenbeck* v. *State of New York,* 193 Misc. 542, affd. 275 App. Div. 871; *Robinson* v. *State of New York,* 3 A D 2d 326).''

The court pointed out that by building a high embankment the State could completely block access to the claimants' property. It would seem that the claimants herein find themselves in the same situation, as the State has the right to take such action as would effectively deny access to the service road from their remaining property. Therefore, in the absence of any reservation in the appropriations to the right of access, the lack of access was a proper element of consequential damages.

It must be next considered whether the award adequately compensates the claimants for this denial of access. The court below found a before value of $191,000 which on the State's figure of 23.65 acres comes to $8,076.10 per acre. Thus the direct damage, for the 10.122 acres taken in fee and giving full value to the .325 acre over which the permanent easement was taken, amounts to $84,373. Subtracting this from the award of $103,600 leaves $19,227 as the amount awarded for consequential damages. The expert for the State testified to $16,600 consequential damage with no consideration or allowance for the loss of the right of access, on the assumption that access had not been denied. He valued the land at $7,000 per acre and his figure of $16,600 consisted of three elements.

(1) Change of grade of Lakeville Road affecting .434 acres — 75% or $2,300.

(2) Damage to area 89 feet in depth south of the easement — 2.8 acres at 25% or $5,100.

(3) Damage to all land remaining after takings due to lessened area and higher cost of development — 13.153 acres at 10% or $9,200.

The claimants' land has been valued on the basis of its use as residential property and if the State has the right to block access to the service road the value of property is substantially

affected. Of course, this is mitigated here by the fact that the remaining property still has frontage on Lakeville Road. The State also pointed out that houses in this area could not be built facing on State highways so that even before the taking internal streets would have had to be constructed to develop the area. However, in this regard the evidence shows that it would be much more advantageous if the houses could be constructed on streets which ran directly onto the service road.

Since the easement acquired by the State would by its nature incur damage for interference with access (*Spinner* v. *State of New York, supra*), the Court of Claims was right in its ruling that loss of access was a proper element in claimants' damage. But the proof made by claimants does not segregate this element or show any specific allocation of loss of access. Claimants' expert merely bulks all consequential damages in a single lump sum. We accept the opinion of the State's expert that the value of the land taken is $73,000 and the consequential damage other than loss of access is $16,600.

If, as the State suggests in its argument in this court, it does not contend that the over-all amount of the award of $103,600 on this claim is excessive, there would be then left a margin of $14,000 for the loss of access, which we regard as adequate and justified in view of the failure of the claimants, on one side, to allocate and break down damages for this item; and admission of the State, on the other, that the total award is not excessive. The State argues, merely, that the element of loss of access should be out of the case, but in this respect we feel bound by *Spinner*.

In claim No. 34235 arising out of the taking of the temporary easement the court awarded $3,850 as damages for loss of fair rental value of the property taken and of the remaining property from August 1, 1956, the date of possession, to April 1, 1957, the date of the trial. The court stated that this award was without prejudice to any further claim for damages for occupancy after April 1, 1957 or for physical damage which might be shown after the State has left. The State's expert stated the damage was $800 and he got this by diminishing the fee value of $\frac{1}{5}$ of the area actually taken by 90% and the remaining $\frac{4}{5}$ by 15%. He testified that the rental value for 18 months would be $200. The claimants' expert testified that the easement prevented development of the claimants' land because the State was using 320 feet of frontage on Lakeville Road and a map could not be prepared and submitted to the Planning Commission while the easement existed. He stated that the fair rental value of all the claimants' remaining prop-

erty for 18 months was $10,700 or about 6.7% of the value of the fee. The court found that this easement did affect the availability for development of the claimants' remaining land and it would therefore seem that this award, which was for eight months only, was warranted by the evidence. It figures out to a lesser rate per month than the figure given by the claimants' expert and is therefore within the range of figures submitted by the opposing experts even though it is much greater than the value given by the State's expert. Another question presented as to this temporary easement is the propriety of granting damages for only a portion of the taking. The map for this parcel was filed in the Secretary of State's office and pursuant to subdivision 5 of section 30 of the Highway Law this gave the State the right to take possession, and they took possession as of August 1, 1956. The court below pointed out that changes in this map could be made until it was filed in the County Clerk's office, and that therefore the period of the taking might possibly be shortened or lengthened pursuant to subdivision 7 of section 30 of the Highway Law. In view of this it would seem that the court below was correct in only awarding damages to the date of trial. In that manner the claimants were not denied compensation resulting from the State actually being in possession and the State is not held for a period which may be longer than its actual period of possession.

The final question raised concerns the amount of interest awarded. In the judgment in claim No. 32839, interest on the $103,600 award was directed from the date of appropriation, October 3, 1953 to April 3, 1954, and from October 21, 1954, the date of filing of the claim, to December 24, 1957, and from May 2, 1958 to May 14, 1958, the date of entry of the judgment. In the judgment in claim No. 34235, interest was directed on the $3,850 award from August 1, 1956, the date recited in the judgment as the date of appropriation, to December 24, 1957 and from May 2, 1958 to May 14, 1958. No interest was awarded on either judgment between December 24, 1957 and May 2, 1958, and none was awarded between April 3, 1954 and October 21, 1954 on claim No. 32839. Claimants appeal these suspensions of interest.

Subdivision 1 of section 19 of the Court of Claims Act provides that if a claim is not filed within the first six months after the claim accrues, interest shall be suspended between the expiration of the six-month period and the time of filing of the claim. Claimants attack the constitutionality of the statute, but this court has already passed upon the question in *La Porte* v. *State*

*of New York,* (5 A D 2d 362) which held the statute constitutional. *La Porte (supra)* is still the law and consequently claimants are not entitled to interest on the judgment in claim No. 32839 between April 3, 1954 and October 21, 1954.

As to the suspension of interest on both judgments from December 24, 1957 to May 2, 1958, the suspension was in accordance with subdivision 4 of section 19 of the Court of Claims Act. Claimants did not return the closing papers, necessary for the entry of judgment, within the statutory 30-day period. They may not profit by their own delay, consequently they are not entitled to interest from December 24, 1957, the date the papers were due back in the Attorney-General's office, to May 2, 1958 when the papers were returned. All suspensions of interest were in accordance with section 19 of the Court of Claims Act.

Judgments in both claims should be affirmed, without costs.

BERGAN, J. (dissenting). I agree with Judge REYNOLDS that the judgment in Claim No. 32839 should be affirmed; but I do so because of the concession of the State in this court that the award and judgment are not excessive even if the item of loss of access be eliminated. The State is right, I think, in its argument that damage for loss of access has not been established and that the findings and decision should be modified to eliminate this item from the judgment.

It has not been established that as to these claimants' rights, the road contiguous to their land is a nonaccess highway; or that as a matter of law any interference with access has occurred by any steps thus far taken by the State. It is a fundamental rule of law, recognized for very many years in this State, that the adjacent land owner has a clear legal right of access to a highway. (*Griefer* v. *County of Sullivan,* 246 App. Div. 385, affd. 273 N. Y. 515.) This right exists, as this court noted " regardless of where title may be " in the right of way.

If the State took absolute title in fee for highway purposes to the strip between the service road and claimants' property, rather than an easement, claimants would not be deprived of access by such a taking. The unexercised easement would not interfere with access to a greater degree than a full title would; and in either case the test of damage would be when the interference with access actually occurred. Where an adjacent owner is damaged by the actual impairment to a highway he may recover (Highway Law, § 30, subd. 15).

If his right to access is physically interrupted or interfered with, he may recover; he ought not to recover for loss of access

56

because of a mere legal interest acquired by the State; where despite such a legal interest, the adjacent owner's access continues unimpaired. The decision in *Spinner* v. *State of New York* (4 A D 2d 987) rested on a special showing of .damage due to the adverse effect on the market value of the remainder of the property. This is not a rule of general application; it would not usually apply; and there is no showing whatever in this case to justify its application. *Dillenbeck* v. *State of New York* (275 App. Div. 871) was a flood case and *Robinson* v. *State of New York* (3 A D 2d 326) involved a nonaccess highway. Neither case has any application to the problem before us.

The judgment in Claim No. 32839 should be affirmed as to amount in view of the State's concession, but the decision should be modified by eliminating the item of damage for nonaccess.

FOSTER, P. J., COON and HERLIHY, JJ., concur with REYNOLDS, J.; BERGAN, J., dissents, in part, in a memorandum.

Judgment in both claims affirmed, without costs. Settle order.