THOMAS D'ANGELO et al., Doing Business as TRIPLE CITIES CONSTRUCTION COMPANY, Appellants-Respondents, *v.* STATE OF NEW YORK, Respondent-Appellant. (Claim No. 50250.)

Third Department, March 1, 1973.

*Chernin & Gold* (*James B. Gitlitz* of counsel), for appellants-respondents.

*Louis J. Lefkowitz, Attorney-General* (*Richard J. Dorsey* and *Ruth Kessler Toch* of counsel), for respondent-appellant.

GREENBLOTT, J.  These are cross appeals from a judgment in favor of the claimants, entered May 26, 1972, and from a corrected judgment entered June 16, 1972, upon a decision of the Court of Claims.  The appeal is directed to the Third, Fourth, Fifth and Sixth claims.

### THIRD CLAIM

The third claim is directed to a contract item of a lump-sum amount of $15,000 for " railroad protection " which provides in substance that the said amount shall be used by the contractor to reimburse the railroad company for services of all of its employees necessarily employed to protect the operation and safety of its equipment during the reconstruction.  The specification provided that such payments would be made from the lump sum provided the railroad or railroads have been previously reimbursed.  The record establishes that the State by independent negotiations with the railroad had paid the items represented by this portion of the contract.  The court found that the State having made direct payments " the item was never activated " by the rendition of any bills by the railroad and thus there could be no recovery by the claimant, the State having a right to make such direct payments.  The contract provided that the State had the right at any time to omit any portion of the work and to alter the plans making appropriate allowances and deductions.  The claimants' contention appears to be that if the State, without consulting the claimants, made direct payments it did not abrogate or void the item in the contract.  From the position taken by the parties hereto, it appears that there might be some ambiguity associated with the wording of the specifications and/or the contract and in such event, the contract having been prepared by the State, it should be most favorably interpreted in favor of the claimants.  Upon the present record it does not appear that the bid item was either altered or omitted from the contract.  The record establishes that the State and the railroad precluded and prevented the claimant from literally or otherwise complying with the terms of the contract provision.  It would be naive to assume that contractors bid each

item at a profit instead of looking to the over-all contract price for a margin of safety in profit. The unilateral action by the State in regard to the particular item to circumvent the terms of a contract without notice or advice to the claimant under the circumstances was not a fair interpretation of the contract. In this kind of a situation — the contract and the payments being under the control of the State — it is our opinion, and we so find, that the claimant is entitled to be paid under the said item the sum of $15,000.

### FOURTH CLAIM

With reference to the fourth claim concerning interest, the State's contention that the court erred in not computing interest on the amount of the State's admitted liability from May 23, 1968 — the date of delivery of the State's final estimate — is correct. (See *Yonkers Contr. Co.* v. *New York State Thruway Auth.*, 25 N Y 2d 1, mod. 26 N Y 2d 969.) Its further contention that interest should be suspended on all awards for the period of April 22, 1971 to September 12, 1971 due to an adjournment of the trial is conceded by the claimants.

### FIFTH AND SIXTH CLAIMS

The fifth claim was based on the effects of the failure of the State to provide claimants with designs for culverts shown on the plans until it was too late to construct these culverts during the winter season of 1965–1966 as planned. The sixth claim was based on the effect of the State's delay in arriving at a design to relocate a cattle pass which claimants had installed. The trial court found that the proof showed that a considerable amount of delay was caused by the lack of box culvert details and came to the conclusion that the State was responsible for the delays relative to the cattle pass. These findings and conclusions are substantiated by the record which reveals that due to the failure of the State to make available the box culvert designs at the beginning of work on the road building contract, the claimants were unable to use the fall and winter of 1965–1966 as planned for the construction of the box culverts. As a result, they had to be built during the regular busy 1966 construction season when the heavy earthwork machinery had to move across the same detours which were being used by the traveling public instead of across completed culverts. The evidence also supports the finding of the trial court that indecision on the part of the State in the relocation of a cattle pass also resulted in delay which affected the earthwork.

As a result of these delays, the machinery which the contract required claimants to have available and which had been allo-

cated by them to the winter culvert work, stood idle and the cost of doing the concrete work and the earthwork in 1966 was greatly increased. Accordingly, the claimants asked to be compensated for the rental value of the idle machinery and for the fair value of the concrete work and the earthwork on a *quantum meruit* basis rather than at the contract rate. The trial court rejected the claim in spite of finding liability on the part of the State, questioning *quantum meruit* as the proper measure of damages and holding that claimants' records were "totally inadequate" to support the concrete and earthwork items. The decision is silent as to the idle equipment.

Addressing ourselves to the question of the proper measure of damages, we conclude that the trial court was in error. Claimants did not, as indicated by the trial court, seek damages in an amount by which their estimated costs plus overhead and profit exceeded their bid. Rather, the claims, as submitted, set forth *actual* costs, together with an allowance for overhead and profit, without regard to their bid. Such an approach has previously been sanctioned by this court. (*Westcott* v. *State of New York,* 264 App. Div. 463, 464.)

The principal issue on this appeal, therefore, centers around the adequacy of claimants' proof, as documented by their records. On this question, claimants assert that their records in support of the concrete and earthwork were audited by the State during a lengthy adjournment in the trial and that their claims were then reduced by agreement in amounts which the State conceded it was able to verify. As a result, the claimants contend that it was agreed between the parties that there was no necessity to introduce the lengthy data from their records prepared by their accountant to support the summaries contained in the concrete work schedule and the earthwork schedule of their amended bill of particulars.

These schedules showed the cost of the labor, equipment and materials, plus a 10% overhead and profit for the concrete work which, when reduced by the amount paid by the State, came to a net of $49,769.32. This, contend the claimants, was by agreement reduced to a net of $37,661.55, the only portion which the State's auditor testified he could actually verify. Similarly, the schedule for the costs of earthwork, as reduced by the amount paid by the State, set forth a claim in the net amount of $331,-397.03. This, claimants contend, was reduced by agreement to $103,736.66, again, the only portion which the State's auditor said he could verify. Consequently, claimants contend, since the trial court found liability, and if *quantum meruit* is the proper measure of damages (and we have concluded that it is),

the trial court had no right to question the "adequacy" of the records which the State itself conceded it had verified.

In our view, however, the effect of this stipulation is far from clear. The State contends that it simply means that the stipulated figures were subject to further examination at the trial. Moreover, the Trial Judge, in his decision, failed to adequately treat this aspect of the proof, nor did he discuss the claim for idle equipment. As to the claim for idle equipment, it is conceded that no written records exist to substantiate this element. Although written records ordinarily do carry more weight than oral testimony, the failure to provide records is not fatal in this instance.

The trial court points out that claimants finished the job within 19 days of the completion date scheduled in the contract. This, he says, indicates that the claimants suffered no real damage. We do not agree, however, that such a conclusion necessarily follows. The record reveals that the contract may have been completed within such a short time only as the result of costly overtime expenses.

Under the circumstances, we believe that the only fair method of resolving the many issues involved in this litigation and determining the amount of damages to which claimants are entitled is to afford both parties an opportunity to present anew, at a new trial, whatever evidence may be available.

The judgment and corrected judgment should be modified, on the law and the facts, (1) by reversing the dismissal of the third claim and directing the entry of judgment thereon in the amount of $15,000 together with appropriate interest; (2) as to the fourth claim by directing that interest in the amount of State's admitted liability be computed from May 23, 1968 and that interest on all awards be suspended from the period of April 22, 1971 to September 12, 1971; and (3) by reversing the dismissal of the fifth and sixth claims and directing a new trial thereon limited to the issue of damages, and, as so modified, affirmed, without costs.

HERLIHY, P. J. (dissenting in part). While I agree with the majority as to the disposition of the third and fourth claims, I disagree with them as to the disposition of the fifth and sixth claims.

The fifth and sixth claims are for additional damages alleged to have been suffered by the claimant as a result of delay caused by the State. The completion date under the contract was December 1, 1967 and the record shows that the work by the claimant was substantially completed on December 20, 1967 **and**

finally accepted by the State on January 29, 1968. With reference to damages the record shows a stipulation of some sort reducing the original demand from $296,988.75 to $153,330 but there is no suggestion that this was to be interpreted as an agreed amount due but was subject to further examination by the respective parties at the trial. The record substantiates the court's finding that there was no sufficient proof to justify an award. It is noteworthy that the request to find by the claimants placed no reliance upon the so-called stipulation. The court's finding as to these claims states:

"The job was completed only nineteen days after the original agreed completion date, however, and even assuming that the State was responsible for the delays, the Claimant failed to present proof which would permit us to determine the loss which it sustained by reason thereof. We believe that it is incumbent upon one who claims to have been damaged to show how much the cost of doing the work was increased by the acts or failures to act of the other party. The General Specifications and Conditions of all public works contracts give clear notice that itemized statements of alleged damages for delays will be required. (Public Works Specifications of January 2, 1962 [Claimant's Exhibit 26] ' Alleged Claims ' p. 72.)

"The Claimant would have us assess damages in the amount by which its estimated actual costs plus allowances for overhead and profit exceeded the amount of its bid on various items. We do not believe this is a proper approach. * * *

"We believe that by failing to keep records when they so obviously would be necessary to prove damages, Claimant effectively forfeited its right to recover damages such as those demanded in the fifth and sixth claims."

The record does not justify our interference with this factual finding by the court. The proof as to damages caused by delay should be readily discernible and subject to mathematical calculation based upon facts in the record. This is particularly so in the present instance where from the outset the claimant intended to assert a claim for such damages. To the extent that there was delay, some of it was necessarily attributable to the claimants upon this record. As noted by the State upon this appeal, the progress schedule would have indicated ample time to complete the box culverts even if all the delay were attributable to the State. The facts in the present record have some similarity to *Peckham Road Co.* v. *State of New York* (32 A D 2d 139, affd. 28 N Y 2d 734).

Therefore, I would affirm so much of the judgment as dismissed the fifth and sixth claims.

SWEENEY, J. (dissenting in part). I agree with the majority as to the disposition of the fourth claim but otherwise disagree and am to affirm. The language of the contract with reference to payment by the State for " railroad protection " is clear and unambiguous. Payment of the lump sum bid is made specifically contingent upon the railroad's acknowledging " receipt of payment of their costs from the Contractor ". Concededly, no such payments were made by claimant due to the fact that the State reimbursed the railroad under its contract with the railroad, which apparently overlapped claimant's contract. Claimant's contract also reserves the right to the State " to alter the plans or omit any portion of the work as it may deem reasonably necessary for the public interest * * *." The State could, with impunity, omit the railroad protection item under claimant's contract, and properly reimburse the railroad for its expenses involved in such protection services. (*Del Balso Constr. Corp.* v. *City of New York,* 278 N. Y. 154, 159.)

. COOKE and REYNOLDS, JJ., concur with GREENBLOTT, J.; HERLIHY, P. J., dissents in part in an opinion; SWEENEY, J., dissents in part in an opinion.

Judgment and corrected judgment modified, on the law and the facts, (1) by reversing the dismissal of the third claim and directing the entry of judgment thereon in the amount of $15,000 together with appropriate interest; (2) as to the fourth claim by directing that interest in the amount of State's admitted liability be computed from May 23, 1968 and that interest on all awards be suspended from the period of April 22, 1971 to September 12, 1971; and (3) by reversing the dismissal of the fifth and sixth claims and directing a new trial thereon limited to the issue of damages, and, as so modified, affirmed, without costs.