FEHLHABER CORPORATION AND HORN CONSTRUCTION CO., INC., a Joint Venture, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 54855.) (Action No. 1.)

STATE OF NEW YORK, Appellant, v FEHLHABER CORPORATION AND HORN CONSTRUCTION CO., INC., a Joint Venture, Respondent. (Action No. 2.)

Third Department, July 26, 1979

364

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Richard J. Dorsey* and *Shirley Adelson Siegel* of counsel), for appellant.

*De Graff, Foy, Conway & Holt-Harris (William F. Conway* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

Claimant Fehlhaber Corporation and Horn Construction Co., Inc., a joint venture, contracted with the State of New York on February 6, 1967 for the construction of the founda-

tion of the Cultural Center of the Empire State Plaza.[1] The completion date was December 31, 1968. When the job was unfinished on that date and for a period of approximately two and one-half years thereafter, the contract was terminated "not for cause" by the State as of July 1, 1971. Immediately prior to the termination date, on May 26, 1971, claimant had made a request that the retainage held by the State be released and that a final payment estimate be prepared. On March 27, 1972 a claim alleging that delays caused by the State resulted in damages of $4,398,380.74 was filed. Fehlhaber also claimed retainage money in the sum of $306,720.74. Thereafter, the State's motion to serve and file a counterclaim of $2,853,636.84 was denied and trial began on November 3, 1976. At the conclusion of the trial, Fehlhaber moved to sever the retainage claim and for partial summary judgment thereon. The State opposed the motion, asserting a right to set off the value of remedial work required on the cultural center foundation against the retainage. The trial court granted claimant's motion and judgment was entered for the amount of the retainage. On appeal from that judgment, this court, on June 1, 1978, reversed and remanded for a full trial on all issues, including the State's counterclaim *(Fehlhaber Corp. v State of New York,* 63 AD2d 1038). When we made that determination, no appeal from a final judgment in claimant's breach of contract action against the State was before us. On November 4, 1977, the trial court awarded claimant damages against the State. By order to show cause, claimant moved to correct the trial court's decision, alleging that it had erred in its mathematical calculation. The decision was amended as of December 13, 1977 increasing the award to $2,746,747.37. Fehlhaber then moved for reargument of our decision reversing the denial of the State's attempt to assert a counterclaim (63 AD2d 1038, *supra)* and remanding the matter for a new trial on all issues, and the State appealed from the judgment entered December 13, 1977 on the breach of contract action. We granted claimant's motion for reargument and heard the same in connection with the State's appeal from the final judgment below.

## APPEAL FROM THE FINAL JUDGMENT

Claimant alleged that interference on the part of the State

---

1. Later named The Nelson A. Rockefeller Empire State Plaza.

resulted in extraordinary delay, specifically, that the State failed to construct a permanent roadway structure at the site causing delay in construction of the foundation, that the State made constant revisions in the contract drawings, and that the State failed to timely award the superstructure contract. As a consequence, claimant alleged that it was damaged in that it had to incur excessive costs in performing the work. The trial court found delay and interference on the part of the State, and, by amended decision, awarded damages in the sum of $3,265,412.99, which it apportioned 75% against the State, 25% against claimant, resulting in an award of $2,449,059.74 for excess cost of performing the work.

■ ■ The State contends that the trial court improperly used the total cost theory of damages. We disagree. We have held that where a claimant does not seek damages in an amount by which its estimated costs plus overhead and profit exceed its bid, but, rather, by setting forth actual costs, together with any allowance for overhead and profit without regard to bid figures, we would sanction that theory of damages (*Fehlhaber Corp. v State of New York,* 65 AD2d 119; *D'Angelo v State of New York,* 41 AD2d 77, 80; *Westcott v State of New York,* 264 App Div 463, 464). Here, Fehlhaber's records were kept on a daily basis and meticulously recorded the number of men and machines on the job each day as well as the type of work being done on each day. To these base costs[2] Fehlhaber added amounts for overhead, profit and

2.

| | | |
|---|---:|---|
| Material & Supplies | $1,722,889.01 | |
| Office Expenses | 35,918.11 | (see Item No. I, *infra)* |
| Repairs & Maint. | 43,271.38 | (see Item No. II, *infra)* |
| Utilities | 9,311.81 | |
| Field Supervision | 80,227.07 | |
| Professional Fees | 18,772.65 | |
| Misc. | ´ 58,517.96 | |
| Field Labor | 2,305,134.59 | |
| Welfare & Pension | 242,464.65 | |
| Insurance | 104,026.08 | |
| Payroll Taxes | 117,281.86 | |
| Trucking Costs | 39,079.32 | |
| Outside Equip. Rental | 21,536.29 | |
| Subcontractors | 1,502,257.70 | |
| SUBTOTAL ........ | $6,300,688.48 | |
| AMOUNT ADDED AS RESULT OF ........ | | |
| AUDIT ........ | 16,932.91 | |
| TOTAL | $6,317,621.39 | |

equipment for the period from December 31, 1968 (contract termination date) to July 1, 1971 (the date the contract was terminated "not for cause"). The State audited claimant's books and records, but never offered its findings as rebuttal evidence. We have previously held that a trial court is justified in crediting oral testimony of a claimant in the absence of any rebuttal by the State with its vast reservoir of engineering and construction experience *(D'Angelo v State of New York,* 46 AD2d 893, affd 39 NY2d 781; cf. *Johnson v State of New York,* 5 AD2d 919). We conclude likewise on these facts and hold that claimant has proved its claim by a fair preponderance of the evidence *(Fehlhaber Corp. v State of New York,* 65 AD2d 119, *supra),* and we are foreclosed from disturbing such findings on this record *(Merritt-Chapman & Scott Corp. v State of New York,* 54 AD2d 37, 40, affd 43 NY2d 690). However, claimant's base costs occasioned by the State's interference with its contract performance, particularized in footnote 2 of this opinion, must be modified as hereinafter explained.

I

HOME OFFICE OVERHEAD

■ The State is in error in relying on *Berley Inds. v City of New York* (45 NY2d 683) to support its position that claimant should not be awarded home office overhead, since that case calls into play the so-called "Eichleay Formula" to determine the amount of home office overhead to be included in arriving at a contractor's delay damages only in those instances where it can be shown that delay was not precipitated by design or engineering problems that call for central staff consideration during the overrun period. It is clear that the trial court held that the main cause of the State's interference resulted from multiple design changes, and these multiple design changes unmistakably required central staff consideration. The record, however, is barren of any explanation or breakdown of this item, and we conclude that we cannot credit such an arbitrary sum as additional costs.

II

REPAIRS AND MAINTENANCE

■■ Next, while we accept claimant's right to charge the fair and reasonable rental value of owned equipment *(Fehlha-*

ber Corp. v State of New York, 65 AD2d 119, 128, *supra*), the Associated Equipment Dealer's Manual (AED) employed by claimant to arrive at the charged rental rates explains the general industry practice that all costs of equipment repair not due to normal wear and tear are the responsibility of the lessee. The record reveals no evidence by claimant indicating what part of the $43,271.38 claimed for repairs and maintenance was for costs which would be claimant's responsibility under the AED guidelines. "It is fundamental to the law of damages that one complaining of injury has the burden of proving the extent of the harm suffered" *(Berley Inds. v City of New York, supra,* p 686). The burden of providing information on cost allocation for equipment and cost of repairs to same is on the claimant *(Bero Constr. Corp. v State of New York,* 27 AD2d 974) and, where, as here, a contractor wrongfully delayed fails to establish the extent to which its costs were increased by compensable repairs and maintenance, speculation will not be indulged and damages will be limited to damages actually proven.

### III

#### INCREASED STEEL COSTS

Claimant claimed $80,664 for the increased cost of steel purchased from Bethlehem Steel after August 1, 1968, pursuant to an agreement dated February 6, 1967. The trial court allowed this claim and, in its amended decision, apportioned 75% of the liability against the State and awarded $60,498 for increased steel costs. We do not challenge claimant's right to seek recovery for increased steel costs since it is obligated to pay over to Bethlehem such costs, and, further, we reject the State's contention that claimant is not so obligated to Bethlehem under the terms of the liquidating agreement. The State has acquiesced in like contractual arrangements with subcontractors of claimant by not appealing awards for similar costs paid over by claimant to Bar Steel Corporation ($37,751.55) and Munro Waterproofing ($32,629.83) and cannot now be permitted to change its position. Nevertheless, we conclude that a mathematical error by the trial court mandates a reduction in the award. The trial court erred in using the cost increase per ton of steel over the original list price. The original list price of $6.75 per 100 pounds was discounted by Bethlehem to $5.95 per 100 pounds for bid purposes. This represents a discount of 80 cents per 100 pounds or $16 per

ton, a 12% discount. The record reveals that there were four price increases during the delay period and that varying quantities of steel were delivered at each price. Using discounted prices instead of list prices, the increased costs for the 4,412 tons of steel delivered after August 1, 1968 is $70,162 which must be further reduced by 25%, on the basis of the trial court's allocation of damages, to the sum of $52,621.50.

IV

SALVAGE VALUE OF TRESTLES

■ We conclude that the State's contention that the award to claimant of $66,901.37 for the salvage value of temporary trestles which were removed after job completion should have been included as part of the State's payments to the claimant is without merit. The award for salvage value is unrelated to costs incurred by claimant for delay on the part of the State. The contract between the parties provided that when the trestles were removed they were to become the property of the contractor. Thus, claimant was entitled to the proceeds from the sale of the materials and it was wrong for the State to include that sum in payments credited.

V

CORRECTED COMPUTATION OF AWARD

As concluded above, office expenses in the sum of $35,918.11 and repairs and maintenance costs totaling $43,271.38 should be deleted as costs caused by the State's delay. Next, since the record does not indicate that claimant has paid Bethlehem for increased steel costs, such sum cannot be considered as part of the claimant's base costs. However, the record contains the liquidating agreement between the parties and that instrument clearly obligates claimant to pay over to Bethlehem all increased steel costs included in any award against the State. Accordingly, since such costs were awarded by the trial court and adjusted downward ($60,489 to $52,621.50) herein, this adjusted sum must be included in the total award.

Claimant accepted $4,897,551.62 from the State, which the trial court found represented the contract price for the work done by claimant after December 31, 1968, a finding which the parties do not challenge. Claimant asserts that it actually incurred base costs of $6,317,621.39 after December 31, 1968. As was discussed hereinabove, we deducted $35,918.11 for

disallowed office expenses and $43,271.38 for disallowed repair and maintenance costs. Therefore, claimant is entitled to an award based on actual base costs of $6,238,431.90. Claimant's contract bid used a 5.46% add-on for overhead and, once overhead was included, an additional 5.46% for profit. In other words, claimant increased its expected costs by 11.22%[3] to include overhead and profit in reaching the actual contract price. Deducting from the amount the State paid ($4,897,551.62) claimant's acknowledged markup for overhead and profit, we determine that the base cost under the contract was $4,403,481.[4] The difference between this figure and *base costs actually* incurred is $1,834,950.90. This amount represents the increased costs due to delay. We accept the trial court's division of fault causing delay at 75% due to the State, 25% due to claimant. Because claimant seeks recovery in terms of cost plus overhead and profit, it is only fitting that claimant not be awarded such add-ons for cost increases induced by his own delay. Therefore, claimant's damages will be measured as 75% of the increased cost due to delay caused by the State, or $1,376,213.10.[5] To this figure, we apply the contract bid add-ons of 5.46% for overhead and an additional 5.46% on that sum for profit. This markup represents the reasonable expectation of the claimant for its compensation on this project. This yields the sum of $1,530,624.20 as the amount due claimant for extra costs,[6] to which must be added the amount of $388,982.05 (75% of $518,642.73) for equipment,

---

3. SINCE PROFIT IS BASED UPON THE SUM OF THE BASE COST PLUS OVERHEAD, THE TOTAL PERCENTAGE OF MARKUP FOR OVERHEAD AND PROFIT WAS CALCULATED AS FOLLOWS:

Total markup = .0546 + .0546 × [1+.0546] = .1122 or 11.22%

4. The base cost under the contract was calculated using the following formulae:

Base Cost + 11.22% of Base Cost = $4,897,551.62

or

Base Cost = $4,897,551.62 ÷ 1.1112 = $4,403,481.00

5. We note that mathematically it does not matter whether the 75% factor is applied before or after profit and overhead are added in, but we have apportioned the costs before the markups in order to emphasize that claimant is entitled to overhead and profit only on that portion of the base costs attributable to delay caused by the State.

6. In *Whitmyer Bros. v State of New York* (— NY2d — [July 3, 1979]) the Court of Appeals approved this court's measure of damages based upon actual job cost plus overhead and profit minus amounts paid for the work performed. There, however, apportionment was not required. Here, we have sought to first obtain a common denominator, i.e., base cost, before apportioning liability and adding on overhead and profit. Such a step-by-step approach makes it clear as to the concepts involved in calculating the damages, but we note that the same result would have been reached had we first added in overhead and profit to claimant's actual cost, then subtracted the full amount of the State's payment and then apportioned that amount.

the amount of $66,901.37 for the salvage value of the trestles, and the amount of $52,621.50 due Bethlehem Steel from claimant. To this award of $2,039,129.12 must be added the damages awarded by the Court of Claims, which were not appealed: $99,500 for pumping costs, $32,629.83 due Munro Waterproofing from claimant, $37,751.55 due Bar Steel from claimant, and $406.88 for extra costs on duplicate change orders. Thus, the total award is $2,209,417.38.

■ In sum, had claimant performed the work prior to December 31, 1968 without delay attributable to either party, the sum of $4,897,551.62 paid by the State would have satisfied the contract obligations of both sides. However, since this ideal was not achieved and claimant's costs were greatly inflated by delay, 75% of which was caused by the State, claimant is entitled to recover 75% of the adjusted delay costs plus its bid percentages for profit and overhead, as well as its equipment costs, salvage costs, and claimant's obligation to Bethlehem Steel for increased steel prices.

### RIGHT OF COURT OF CLAIMS TO AMEND DECISION

■ As noted above, in response to a motion brought on by order to show cause, Judge AMANN amended his original decision so as to increase the award. The State contends he was without authority to make such a substantive change by amendment. However, the change, in our view, though incorrect, amounted to nothing more than a correction of a mathematical calculation and not a substantive change and, as such, was permissible under the provisions of both CPLR 2001 and subdivision 8 of section 9 of the Court of Claims Act. The theory of damages was not changed by the Court of Claims in its corrected decision (cf. *Morton v State of New York,* 9 Misc 2d 674, 677, affd 8 AD2d 49). While we have changed the manner in which claimant's damages should be calculated, any substantive change in the concept of calculating damages by an appellate tribunal is beyond attack (see *Herpe v Herpe,* 225 NY 323, 327).

### REARGUMENT OF OUR DECISION OF JUNE 1, 1978

■ In our decision of June 1, 1978, we reversed the Court of Claims' order granting claimant partial summary judgment for the retainage money and remanded the matter for trial on all issues *(Fehlhaber Corp. v State of New York,* 63 AD2d 1038, *supra).* After reargument, we have concluded that our

decision of June 1, 1978 (63 AD2d 1038) should be recalled, the order of the Court of Claims, entered April 13, 1977, which granted Fehlhaber partial summary judgment for the retainage should be reversed, on the law, and a new trial should be ordered on the issues raised (1) by that portion of the claim seeking to recover the retainage and (2) by that portion of the counterclaim, herein authorized to be pleaded by the State, seeking to recover damages for remedial work caused to be performed by the State because of breach of contract by claimant.

With respect to the claim for the retainage, we observe that claimant is only entitled to the retainage if the contract has been performed in accordance with the plans and specifications agreed upon between the parties (State Finance Law, § 139, subd 1). Since this case was tried without a pleaded counterclaim, the State was unable to address the issue of whether the degree of claimant's culpability (25%) so affected its performance under the contract that it might not be entitled to the retainage money.

Next, the second and third causes of action contained in the State's counterclaim are stricken. The second cause of action is a contingent action over against claimant if other contractors succeed in suits against the State for delay that could be attributable to claimant. A counterclaim cannot be contingent, it must allege a viable cause of action. The third proposed cause of action seeks a declaratory judgment concerning the State's rights against claimant. The Court of Claims does not have the authority to render a declaratory judgment (CPLR 3001).

With respect to the first cause of action in the proposed counterclaim, the State may not seek any recovery for "uncompleted" contract work. The contract was terminated as of July 1, 1971 and claimant is not liable for additional costs beyond that date. Nor may the State offer any proof or seek recovery for alleged additional costs due to claimant's breaches and abandonment. Claimant did not abandon the contract and its breaches of the contract were exhaustively covered at trial; any harm to the State is included in the apportionment.

However, since the trial court did not permit any testimony on the subject of damages due to corrective work after claimant left the job, the State may offer proof with respect to such costs. But since damages incurred by remedial work are not

related to delay, such damages, if proved, would not be subject to the 75% to 25% apportionment.

■ Lastly, since no proof was offered at trial regarding that portion of the State's first cause of action in its proposed counterclaim that alleges additional costs for temporary heat supplied to other contractors from 1972 through 1976 because of claimant's breach of contract, this issue must be tried. We note that since the State contends these additional costs were incurred because of claimant's delay, such recovery, if any, is apportionable. The remaining allegation in the first cause of action, entitled "Miscellaneous additional costs", also raises triable issues.

■ As to the dismissal of the State's action in Supreme Court, we note that that action is premised upon allegations which are substantially the same as those contained in the counterclaims discussed hereinabove. Accordingly, Special Term's order and the judgment entered thereon should be affirmed.

The judgment entered December 13, 1977 should be modified, on the law and the facts, by reducing the award of damages to $2,209,417.38, with appropriate interest, and, as so modified, affirmed, without costs; the decision of this court dated June 1, 1978, withdrawn, the order of the Court of Claims entered April 13, 1977 granting claimant partial summary judgment reversed, on the law, without costs, and a new trial ordered (1) on the issue raised by the claim to recover the retainage, and (2) on the issues raised by counterclaim as to the State's right to recover damages for remedial work performed after July 1, 1971, temporary heat supplied after July 1, 1971 and miscellaneous costs; order entered September 25, 1978, and judgment entered thereon, affirmed, without costs.

Sweeney, Kane and Main, JJ., concur.

Judgment, entered December 13, 1977, modified, on the law and the facts, by reducing the award of damages to $2,209,417.38, with appropriate interest, and, as so modified, affirmed, without costs; the decision of this court, dated June 1, 1978, withdrawn, the order of the Court of Claims, entered April 13, 1977, granting claimant partial summary jdugment reversed, on the law, without costs, and a new trial ordered (1) on the issue raised by the claim to recover the retainage, and (2) on the issues raised by counterclaim as to the State's right to recover damages for remedial work performed after July 1,

1971, temporary heat supplied after July 1, 1971 and miscellaneous costs; order, entered September 25, 1978, and judgment entered thereon, affirmed, without costs.