NAJJAR INDUSTRIES, INC., et al., Respondent-Appellant, v
CITY OF NEW YORK, Appellant-Respondent.

First Department, June 17, 1982

#### APPEARANCES OF COUNSEL

*Joseph F. Grassi* of counsel (*Leonard Koerner, James P. Griffin* and *Paul S. Kleidman* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellant-respondent.

*J. Robert Ellner* of counsel (*Max E. Greenberg, Cantor & Reiss,* attorneys), for respondent-appellant.

#### OPINION OF THE COURT

SILVERMAN, J.

This action arises out of a construction contract dispute. The jury rendered a verdict in favor of plaintiff for $1,849,626.50, and the judgment rendered represents that sum plus interest at the rate limited by section 3-a of the General Municipal Law, i.e., 3% per annum, plus costs and disbursements in the trial court.

Plaintiff is a joint venture composed of two corporations, Najjar Industries, Inc., and Coppola Bros. Excavation Corp. The joint venture was awarded a contract by the City of New York in the total original sum of $5,119,000 to erect an air pollution device at the Greenpoint Incinerator in Brooklyn, New York. Plaintiff was the prime contractor. The contract was awarded on November 29, 1972; work was to commence on January 5, 1973 and be completed by July 8, 1975. In fact, there were various delays starting early in the contract performance. Work continued until about November, 1976, at which time plaintiff and its subcontractor finally left the job with the job still uncompleted. The gravamen of the suit is that the delays were caused by the city's failure to co-operate and failure to perform its obligations promptly. Plaintiff filed three successive and successively larger notices of claim against the city dated December 11, 1973, November 6, 1974 and October 15, 1976. Each of these claims claims a sum resulting from the city's breach and abandonment of the contract and includes an item of "value of work performed" and the final notice includes an item "subcontractor's and supplier's claims".

A slightly novel legal theory presented by plaintiff in this case is that at the time of the first notice of claim plaintiff "rescinded" the contract (although none of the notices of claim uses the word "rescind" and all seem to present the usual claim by a contractor for amounts due by reason of the city's breach and delay) and that it thereupon became entitled to recover the reasonable value of its work and materials as of that date, i.e., *quantum meruit*. The jury found that the city had breached the contract, that plaintiff had properly exercised its right to rescind and that its performance after December, 1973 was not a waiver of its right to rescind.

We agree that these were questions of fact for the jury, and that accordingly the jury's verdict should not be interfered with on these points. Thus plaintiff is entitled to recover the reasonable value of the work performed and of the materials it furnished.

The major question that is left is that of damages and whether proper evidence and measures of damages were presented to the jury.

Plaintiff presented two methods of calculations of damages, the first, which we shall refer to as plaintiff's primary method of calculation, was based on the claimed expert opinion of Mr. Najjar, the principal, and sole employee, of one of the two joint venturer plaintiff corporations. That witness gave as his opinion that the reasonable value of the total work and materials at Greenpoint Incinerator was $6,414,243, and that as plaintiff had been paid $4,176,553, there was still owed $2,237,690.

A second method of calculating damages developed during the trial. We shall refer to this as plaintiff's alternative method of calculation. In this method, plaintiff started as a basis with a city official's estimate of costs totaling $2,966,829 and added to it various additional items, many of them disputed, which had not been considered by the city official. This alternative method of calculation, according to plaintiff, showed a reasonable value of something over $5,638,000, and subtracting from this figure $4,176,553, left a net amount owed on this alternative method of calculation of $1,461,563.

The court in its charge submitted both these calculations to the jury. The jury, not by coincidence, rendered a verdict for plaintiff for $1,849,626.50, a straight arithmetic average to the penny of these two figures.

We do not think the evidence permits this verdict to stand.

As to plaintiff's primary method of calculation, plaintiff's expert based his opinion on his prebid estimates made in late 1973 or early 1974 for a similar, but not identical, pollution control device for an incinerator plant to be built in southwest Brooklyn, and he then made arithmetic — and perhaps simplistic — modifications for the differences, e.g., the southwest Brooklyn device had three towers while the Greenpoint device here involved had four towers, so he increased his southwest Brooklyn tower figure by one third to arrive at his opinion of the value of the four towers at Greenpoint.

The customary method of calculating damages on a *quantum meruit* basis in construction contract cases both on completed contracts and contracts terminated before

completion is actual job costs plus an allowance for overhead and profit minus amounts paid. (*Whitmyer Bros. v State of New York*, 47 NY2d 960, 962, affg 63 AD2d 103; *Fehlhaber Corp. v State of New York*, 65 AD2d 119, 127; 69 AD2d 362, 368.) It is well established that prebid estimates made by the contractor to compute a bid price are not a valid basis for computing recovery. (*Whitmyer Bros. v State of New York*, 63 AD2d, at p 108; *Manshul Constr. Corp. v Dormitory Auth. of State of N. Y.*, 79 AD2d 383, 388; *Mt. Vernon Contr. Corp. v State of New York*, 56 AD2d 952, 954; *Kec Corp. v Fulton-Montgomery Community Coll.*, 44 AD2d 737; *D'Angelo v State of New York*, 41 AD2d 77, 80, mo . 34 NY2d 641; *Fehlhaber Corp. v State of New York*, 69 AD2d, at p 368.) The major reasons for this rule is that such prebid estimates are "computations of a subjective nature by the bidder rendering such estimated costs unauditable" by the public authority (*Mt. Vernon Contr. Corp. v State of New York*, 56 AD2d, at p 954).

The objection to prebid estimates is even stronger in the present case when these prebid estimates are estimates of another job and made as of another date, late 1973 or early 1974, which is neither the date of the contract here involved nor the date of completion of work.

Nothing substantial is added to such evidence by the testimony of one of plaintiff's principals giving these figures and then saying that it is his opinion of reasonable value. Such an "expert opinion" of reasonable value is quite meaningless, being really only a repetition of the prebid estimates. There is no market, nor any prevailing or customary market price, for municipal incinerators, unfinished or even finished. The reasonable value of a municipal incinerator, like that of most public works, is what it reasonably costs to build (assuming the municipality wants it that much).

This is not to say that in a proper case oral testimony of actual costs may not be acceptable. (*D'Angelo v State of New York*, 46 AD2d 983.) But here plaintiff's witness has expressly disclaimed knowledge of actual costs.

The fact that plaintiff's legal theory is one of rescission as of December, 1973 does not alter these conclusions. The method of calculating damages on a reasonable value or

*quantum meruit* basis is not affected by variations in the particular legal theory by which liability, as distinct from damages, is established. And indeed, a "rescission" theory is not particularly different from the usual reasonable value or *quantum meruit* claim for delay damages in construction contracts where the plaintiff claims that because the defendant has breached the contract, plaintiff may disregard the contract figures and proceed on a *quantum meruit* basis. (*Fehlhaber Corp. v State of New York,* 65 AD2d, at p 127.)

Finally, the situation is not altered by the difficulties plaintiff may have in establishing its costs in the circumstances of the present case. These difficulties are largely self-inflicted by the joint venture. Plaintiff is not Mr. Najjar; it is not even Najjar Industries, Inc.; it is a joint venture consisting of Najjar Industries, Inc., and Coppola Bros. Excavation Corp. While the books may not be in the possession of Mr. Najjar, they are or were in possession of the other joint venturer, Coppola Bros. Excavation Corp. Because of internal difficulties and apparently disputes between Najjar and Coppola, the books are said to be inaccessible to Najjar. But there is no explanation of why the books are not accessible to Coppola. Coppola is just as much a part of plaintiff joint venture as Najjar, and will benefit from the judgment in favor of the joint venture just as much as the other joint venturer, Najjar. The fact that one member of the plaintiff joint venture refuses to cooperate in the lawsuit does not militate against the defendant. Like a partnership, a joint venture is responsible for the conduct of one of the joint venturers.

On balance, plaintiff's primary method of calculation of damages does not appear to us to be a sufficiently substantial basis on which to permit a jury verdict to rest in whole or in large part.

Nor does the alternative method of calculation presented by plaintiff present a permissible basis for calculating reasonable value. Like the primary method, it is to some extent based on prebid estimates relating to the southwest Brooklyn plant. It includes the whole of certain disputed claims by subcontractors. These disputed claims by subcontractors are no more evidence of reasonable value than

is plaintiff's disputed claim in the present case for $2,756,707 (the amount demanded in the complaint and in its last amended notice of claim).

One of these disputed claims by PCW, a subcontractor, for $408,000 is included in the alternative method of calculation at that figure. Apparently that claim has been determined by arbitration; yet the trial court sustained plaintiff's objection to the submission of the amount of the arbitration award, which presumably definitively fixed the amount owed to PCW. Whatever the rationale of the award, or the failure to state rationale, the amount of that award plus other amounts paid to PCW would seem to constitute the total amount paid or owed to PCW. Instead of those figures, the alternative calculation includes the total amount of PCW's claim.

There are also included in the alternative calculation various assumed but not established expenses.

To be recoverable "damages must be not merely speculative, possible and imaginary, but they must be reasonably certain, and such only as actually follow or may follow from the breach of the contract. * * * They may be so uncertain, contingent and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain." (*Wakeman v Wheeler & Wilson Mfg. Co.*, 101 NY 205, 209.) In such circumstances, it is usually the right of a person complaining of breach of contract "to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it, and then it is for the jury, under proper instructions as to the rules of damages, to determine the compensation to be awarded for the breach." (*supra*, at p 210.) But in the present case it is not certain that damages have been caused by the breach of contract. Plaintiff has been paid $4,176,553 and the city contends

that so far as appears plaintiff has been fully compensated. In the circumstances, it is incumbent on plaintiff to adduce adequate proof to enable the trier of facts to determine plaintiff's actual, reasonable costs and damages.

Accordingly, a new trial is necessary on the issue of damages only.

As we are ordering a new trial on damages, it is unnecessary for us to consider plaintiff's contention as to the unconstitutionality of section 3-a of the General Municipal Law. (But see *Acme Bldrs. v County of Nassau,* 31 NY2d 924.)

The judgment, Supreme Court, New York County (D. BOEHM, J.), entered February 4, 1981 in favor of plaintiff against defendant in the total sum of $2,088,795.26, should be modified, on the law and the facts, to the extent that the judgment is reversed as to the amount of damages only, and a new trial ordered as to the amount of damages only, and the judgment should otherwise be affirmed, without costs on appeal to either party.

The order, Supreme Court, New York County (D. BOEHM, J.), entered April 6, 1981 denying defendant's motion for judgment notwithstanding the verdict, should be affirmed, without costs.

MURPHY, P. J., SULLIVAN, ROSS and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 4, 1981, unanimously modified, on the law and the facts, to the extent that the judgment is reversed as to the amount of damages only, and a new trial ordered as to the amount of damages only, and the judgment otherwise affirmed, without costs and without disbursements, and the order of said court, entered on April 6, 1981, unanimously affirmed, without costs and without disbursements.