OPINION OF THE COURT
Gerard M. Weisberg, J.
Defendant City University of New York (CUNY) has moved to dismiss the claim of Ames Contracting Co., Inc. (Ames). Prior to July 1, 1979, CUNY was known as the Board of Higher Education in the City of New York (Board). (See Education Law, § 6203.)
Pursuant to a contract dated July 28, 1971, claimant agreed to erect, maintain and lease a temporary dining hall at Herbert H. Lehman College, a facility owned and operated by the Board. In return, defendant promised to pay “a net annual rental during the five-year term of this Lease at the annual rate of $99,300.00 per year” in monthly installments of $8,275. Additionally, the Board obligated itself to discharge all taxes “levied * * * upon the *359 demised premises” plus water, sewer, gas and electrical assessments and charges. It was specifically relieved from the payment of city and State sales or use taxes “charged against the Contractor, for materials and equipment purchased by the Contractor or installed * * * into the construction of the building”. Also, under the agreement, the Board was not required to pay any “inheritance, succession or transfer taxes” charged against the interest of the claimant or any of its successors in the “demised premises.”
At the expiration of the five-year term of the lease, the Board had the option “to purchase * * * the demised” building from the claimant together with “all * * * materials incorporated therein”. As a condition for the exercise of this right, at least 60 days’ written notice was required to be given by the Board prior to the end of the lease. If the Board did not use its option “then and in such event” claimant “at the expiration of the five-year term” of the lease was to “remove the building * * * from the grounds of the Board” which, in turn, was to pay “the reasonable cost of removal not exceeding $10,000 within thirty (30) days after removal is completed.”
The lease terminated on May 15, 1977. Prior to that, a letter dated May 4, 1977 was mailed to Ames from James A. Cunningham, the business manager of Lehman College. This stated, in part, that p ursuant to its option to purchase, the college was “hereby giving written notice of [its] intent to purchase said facility effective the termination date of our lease, May 15, 1977.” A “bill of sale for the premises” was also requested.
Bob Ames, claimant’s president, responded to this by letter to Mr. Cunningham, dated May 6, 1977. He stated that “[w]e herewith reject your notice [i.e., the purported exercise of the option] as not conforming to * * * the Lease.” He also expressed “our intention to proceed with the terms and conditions” of the agreement.
Claimant filed notices of intention on February 26,1981 and October 27, 1982. Its claim, filed on November 10, 1982, contains two distinct causes of action. The first seeks the aggregate of “24” monthly rentals for the use and occupancy of the premises. The second demands payment by the Board of the reasonable value of the building. *360 Claimant also alleges that defendant refused to permit the removal of “the building and its facilities” as provided by the agreement.
Defendant moves for dismissal for two reasons. Primarily it is argued that the claim fails to state a cause of action. CUNY also contends that the filing in this action was untimely. (See CPLR 3211, subd [a], par 7; Court of Claims Act, § 10, subd 4.)
Specifically, with respect to its first contention, defendant takes the position that the agreement between the parties was not a lease at all, but rather a sale of goods governed by article 2 of the Uniform Commercial Code. This being so, it is reasoned, “the reservation of title” in the facilities by claimant was merely the retention of a security interest in the premises. When the Board discharged its obligation under the agreement, it was entitled to ownership “automatically.” In other words, after final payment under the lease, Ames had no remaining interest in the building upon which a claim could be based.
Defendant’s analysis of the effect of a reservation of title pursuant to a sale of goods finds some support in the Uniform Commercial Code. (See Uniform Commercial Code, § 1-201, subd [37]; § 2-401, subd [1].) The determinative issue in deciding this branch of CUNY’s motion therefore is whether the transaction was in fact a sale of goods governed by the strictures of the statute. For the reasons set forth below, we hold that it was not.
Defendant observes that by virtue of subdivision (1) of section 2-107 of the Uniform Commercial Code “[a] contract for the sale of * * * a structure or its materials to be removed from realty is a contract for the sale of goods within [article 2] if they are to be severed by the seller”. Under subdivision (2) of that section, “[a] contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in subsection (1)” is a contract for the sale of goods whether severance is to be performed by seller or buyer.
Initially we note that if the building had in fact been “severed” pursuant to the agreement, title at all times *361 would have remained with the claimant. It cannot therefore be said that the contract, when executed, contemplated a “sale” in the event the property was to be removed by Ames. (See Craig v American Dist. Tel. Co., 91 Misc 2d 1063, affd 59 AD2d 1061.) The only transfer of title “for a price” (see Uniform Commercial Code, § 2-106, subd [1]) was to take place if the premises were to remain in place. On its face, subdivision (1) of section 2-107 of the Uniform Commercial Code is therefore inapplicable to the instant transaction.
Assuming subdivision (2) of section 2-107 of the Uniform Commercial Code is applicable, a factual question of the “material harm” resulting from severance is presented. In the context of this motion, this issue should be resolved in claimant’s favor. (See Guggenheimer v Ginzburg, 43 NY2d 268, 275; Siegel, NY Prac, § 265.) It would therefore be inappropriate to grant defendant’s application.
More significant, however, is our conclusion that the agreement between the parties cannot be classified in the manner urged by defendant. In this and other jurisdictions, there has been a long and time-honored distinction between contracts for the sale of goods and those for the rendering of services. (See Perlmutter v Beth David Hosp., 308 NY 100; see, also, Mixer v Howarth, 38 Mass 205, 207.) Obviously the provisions of the Uniform Commercial Code will not apply to the latter type of agreement. (Perlmutter v Beth David Hosp., supra.)
The characterization of a contract as one for services or sale of goods is dependent upon the dominant element of the agreement. (Milau Assoc. v North Ave. Dev. Corp., 42 NY2d 482, 485-486; 1 Anderson, Uniform Commercial Code [3d ed], § 2-105:38.) Where service predominates and the transfer of title to personal property is incidental to the transaction, a contract will not fall within the ambit of the Uniform Commercial Code. (Schenectady Steel Co. v Trimpoli Gen. Constr. Co., 43 AD2d 234, 237, affd on other grounds 34 NY2d 939; Ben Constr. Corp. v Ventre, 23 AD2d 44; see North Amer. Leisure Corp. v A & B Duplicators, 468 F2d 695; 1955 Report of NY L Rev Comm, p 361.)
Construction contracts are service contracts providing a combination of labor, skill and materials and are generally *362 exempted from the operation of the Uniform Commercial Code. (1 Anderson, Uniform Commercial Code [3d ed], § 2-105:35; see Ben Constr. Corp. v Ventre, supra; Joseph P. Suchy, Inc. v Stuerzel, 82 Misc 2d 40 [App Term, 1st Dept]; Oilheat Systems v Spadaro, 137 Misc 384 [App Term, 1st Dept].)
The essence of the agreement between the parties was for services. It is undisputed that, in addition to erecting the structure, claimant was under an obligation to maintain it during the term of the lease. Specifically, Ames was required to make “structural repairs to the demised building and provide for service and repair of the electrical, plumbing, heating and air conditioning equipment.” In addition, until the expiration of the five-year term, claimant had to “repair, replace, restore, or rebuild” any finished item “in which defects of materials or workmanship” appeared.[1]
The joint duty of construction and upkeep dominated the transaction. The relationship between the parties was not circumscribed by the simple transfer of goods. Rather, the fundamental thrust of the contract was the continual, comprehensive and “workmanlike performance of a * * * service” for a period of over five years. (See Milau Assoc. v North Ave. Dev. Corp., supra, p 488.) We therefore cannot pigeonhole this agreement under the category of a sale of goods and conclude that the Uniform Commercial Code is inapplicable to this claim.[2]
Board of Higher Educ. v Bass & D'Alessandro Enterprises (85 AD2d 543, opp dsmd 58 NY2d 686), cited by defendant, is distinguishable. Although the facts in that case, including the operable instrument, are similar, the nature of the underlying action is different. In contrast to the instant claim for breach of contract, the Board in Bass had commenced a declaratory and injunctive action. This court does not have jurisdiction to render that type of *363 relief. (CPLR 3001; Court of Claims Act, § 9; Fehlhaber Corp. & Horn Constr. Co. v State of New York, 69 AD2d 362, 374; see Matter of Silverman v Comptroller of State of N. Y., 40 AD2d 225.) More importantly, Bass is specifically limited to its facts, which were given due consideration at trial. It is therefore irrelevant to the determination of this motion.
Defendant also contests the timeliness of the claim. In particular, CUNY argues that this court “lacks jurisdiction over claims for monthly rental accruing prior to August 26, 1980,” the date that is six months before the filing of the first notice of intention in this action. (See Court of Claims Act, § 10, subd 4.)
The claim in this action, dated November 1, 1982, reads, in part, that Ames “is now seeking to recover its damages for 24 months of the defendant’s continuing use and occupancy of the premises in the sum of $212,460.00”. The clear import of this statement is that damages for the reasonable rental value of the premises (see 13 NY Jur, Damages, § 104, p 576) are only being demanded for the two-year period beginning on November 1,1980.[3] This date is within the six months prior to the filing of the first notice of intention.[4] It is also after the date for the accrual of rental damages that CUNY argues is proper. Since claimant has already limited itself to those rents accruing on or after November 1, 1980, defendant’s motion is denied as being academic.
Defendant does not argue that the second branch of the claim, which seeks the reasonable value of the building, is untimely. We therefore take no position on that issue.
We have considered defendant’s other contentions and find them without merit.
Upon the foregoing, the branch of defendant’s motion to dismiss the claim in its entirety is denied. The portion of the motion to limit the claim for reasonable rentals to *364 those accruing on or after August 26, 1980 is denied being academic.

. Neither party has provided us with a complete copy of the contract. The excerpts pertaining to claimant’s repair duties appear in its memorandum of law; their accuracy was not contested by CUNY.

. Our research has disclosed some authority which deems the sales/service dichotomy issue to be a question of fact, resolvable at trial. (1 Anderson, Uniform Commercial Code [3d ed ], § 2-105:51; see Prince v Spire Corp., 584 SW2d 108 [Mo].) Although we do not adopt this position, we note that its application to the instant motion would result in its denial. (See Guggenheimer v Ginzburg, 43 NY2d 268.)

. Future damages for use and occupancy of the premises, arising after the 24 months specified in the claim, are also requested.

. That notice of intention states that a claim would be filed seeking damages “as of September 15, 1980”. Although this could imply that rents prior to August 26, 1980 would be demanded, no such inference is supported by the claim. This latter document, from which the court’s jurisdiction is ultimately derived, is controlling. (See Court of Claims Act, § 10.)