COLUMBIA ASPHALT CORP., Respondent-Appellant, v STATE OF
NEW YORK, Appellant-Respondent. (Claim No. 58249.)

Third Department, August 30, 1979

134

## APPEARANCES OF COUNSEL

*Berman, Paley, Goldstein & Berman (Alvin Goldstein* of counsel), for respondent-appellant.

*Robert Abrams, Attorney-General (Richard J. Dorsey, Shirley Adelson Siegel* and *Jeremiah Jochnowitz* of counsel), for appellant-respondent.

## OPINION OF THE COURT

Sweeney, J.

Claimant, Columbia Asphalt Corporation, was awarded a contract by the Department of Transportation of the State of New York for the reconstruction of a portion of the Sunrise Highway Extension in Suffolk County, New York. The State gave the claimant notice by letter, dated March 6, 1970, that it had executed the contract and directed claimant to proceed with the work on or before March 16, 1970. The contract provided for a completion date of December 29, 1971. Under the contract, claimant was required to construct a 36-foot wide concrete mainline containing three lanes in each direction, separated by an asphalt median with median barriers and fences; two asphalt service roads, curbs, sidewalks and right-of-way fences; two recharge basins and 12 retention basins; and five new bridge structures. Claimant was also required under the contract to do extensive drainage work, demolish certain bridge structures, maintain and protect traffic and do other miscellaneous work. The completion date was extended by the State to November 20, 1972 without engineering charges, except after June 1, 1972, and the project was finally accepted by the State on January 26, 1973. Thereafter, claimant filed its claim on March 4, 1974 seeking a total of some $2,807,191.32, with interest, in four separate causes of action.

In the first cause of action, claimant sought to recover for an allegedly improper deduction by the State for noncompliance with contract requirements concerning traffic maintenance and protection. The Court of Claims awarded claimant $2,801.40 with interest on this cause of action. Neither party

seriously disputes the propriety of said award on this appeal. Upon our review of the record, we find no reason to disturb the award made by the Court of Claims on the first cause of action and, consequently, the award should be affirmed.

Claimant's second cause of action is based on breach of contract and contains a multitude of allegations concerning claimed instances of interference and delay on the part of the State. The Court of Claims held the State liable for various instances of interference and delay, while rejecting other such claims, and awarded claimant $316,929.66, with interest, on this cause of action. In making this award, the Court of Claims apportioned damages on an 85%-15% basis, with the State being found liable for 15% of the damages incurred. Accepting the claimant's formula and computations in determining damages, the Court of Claims then took 15% of the difference between claimant's estimated costs and the actual completion costs plus certain extended job costs. From this figure was subtracted a credit that claimant conceded the State was entitled to if claimant was allowed recovery under the third cause of action.

■ Initially, we would note that this credit, which resulted from a duplication of labor costs in the second and third causes of action, should have been subtracted from the total damages before applying the apportionment, rather than subtracting it from the damages after the apportionment was applied. As to the determination of total damages, we are of the opinion that the Court of Claims erred in using the difference between the actual costs and estimated costs *(Whitmyer Bros. v State of New York,* 63 AD2d 103, 108, affd 47 NY2d 960; *Mount Vernon Contr. Corp. v State of New York,* 56 AD2d 952). Nor can we use the formula applied in *Whitmyer Bros. v State of New York (supra)* due to the fact that in that case there was no apportionment of damages. In the present case, we must apportion damages, but only for the extra work caused by delay and interference. Therefore, we must determine the total damages due to the delay. The contract price for the work done adjusted for changes in quantities equals $11,838,396. This amount, less a deduction for failure to maintain traffic control devices and a deduction for engineering expenses, was paid by the State to claimant. This figure of $11,838,396 represents an amount which if paid by the State would have satisfied its contract obligation had claimant performed its work satisfactorily prior to December

29, 1971 without delay attributable to either party. The total job cost was testified to by claimant's witness as amounting to $11,513,469 and such amount is supported by documentary proof submitted by claimant at trial. We also find, based on our examination of the record, that the use of 10% for overhead and an additional 10% for profit is fair and reasonable. Adding said overhead and profit to the total job cost and then subtracting the figure of $11,838,396, the cost of delay should be $2,092,901 less a credit of $11,971.74 for the previously mentioned duplication of labor costs. Accordingly, we conclude that the cost of delay amounts to $2,080,929.26.

Having found the cost of delay, the question then becomes to what extent should the State be held liable for such cost of delay. The Court of Claims, as previously stated, held the State liable for various incidents of interference and delay and determined that the damages should be apportioned on an 85%-15% basis. Although both parties contend that the Court of Claims erred in its findings concerning liability on the part of the State in regard to many of the claims of alleged interference and delay, it is the opinion of this court that the findings of the Court of Claims on all but two of these claims are supported by ample evidence in the record and should not be disturbed.

One claim of interference and delay for which we believe the Court of Claims should have found the State liable concerns certain signs located on the contract site. The State failed to remove several large signs located throughout the contract site. There was sufficient evidence that of these signs the Bowl sign, the Roller Rink sign, the Drive-In Theatre sign, the Volkswagen sign, the Warwick sign, the Amoco sign, the Howard Johnson sign, the Bright Bay Mercury sign and the Bay Shore Farmer's Market sign all caused interference with efficient clearing operations and preparations for paving the service roads. We disagree with the Court of Claims that failure to remove the signs was a reasonably foreseeable cause of delay clearly within the contemplation of the parties when the contract was executed. Although the Court of Claims correctly noted that there was a lack of evidence concerning the length of delay attributable to each sign, we are of the view that due to the nature of the delays such proof would have been, for all practical purposes, impossible to produce. Consequently, we conclude that some liability should have

been imposed upon the State for the delay resulting from the failure to remove the signs previously enumerated.

■ The other claim of interference and delay which we believe was improperly decided by the Court of Claims concerns certain gas tanks which delayed installation of a gas main. Claimant was informed of this obstruction on July 2, 1970 and the tanks were removed on July 22, 1970. The Court of Claims found the State liable for a three-week delay limited to labor and equipment. A witness for claimant, however, testified that labor crews were moved elsewhere to work until the obstruction was removed. Thus, the State should not have been held liable for a three-week delay, but only such delay as resulted from the movement of work crews and equipment from the affected area to another area and then back again. Accordingly, the liability imposed upon the State based upon this claim should not have been as extensive as that determined by the Court of Claims.

■ One other claim of interference and delay merits discussion. The State refused to allow the pouring of bridge deck concrete during the winter months unless a certain procedure provided in the Public Works Specifications was complied with by claimant. Claimant contended that the method required by the State was unreasonable under the circumstances and sought to use another method also provided for in the Public Works Specifications. Permission to follow this optional procedure was denied claimant and an alleged eight-week delay resulted. The Public Works Specifications provided that no concrete could be placed when the temperature was below 40° Fahrenheit, unless permission to do so was granted in writing by the engineer. Although the State could not deny permission arbitrarily, we are of the opinion, upon examination of the record, that the State did not act arbitrarily in this regard and, therefore, the Court of Claims properly found no liability on the part of the State on this claim.

Considering our finding that the State should have been held liable for failing to timely remove certain signs and our finding that lesser liability should have been imposed upon the State for untimely removing certain gas tanks, and upon thorough examination of the record, it is the opinion of this court that the apportionment of damages on an 85%-15% basis should not be disturbed. Applying this apportionment to the cost of delay previously calculated by this court results in liability on the part of the State of $312,139.39. Consequently,

the award on the second cause of action should be modified by decreasing the award to $312,139.39, with interest. Although the method used herein to calculate damages differs from the method used by this court in *Fehlhaber Corp. v State of New York* (69 AD2d 362) to the extent that in the present case we have not factored out overhead and profit prior to apportioning liability, we would point out, as we noted in *Fehlhaber,* that the same numerical result is reached using either method.

■ In the third cause of action, claimant sought payment for 48,423 cubic yards of excavation material, called "borrow" material, at a price of $1.75 per cubic yard. The Court of Claims held that claimant was entitled to be paid for 35,211 cubic yards at $1.75 per cubic yard. Claimant contends that it was required to purchase 59,368 cubic yards of borrow material in order to complete the job. The Court of Claims properly gave the State a credit of 6,400 cubic yards for material used to manufacture Item 4 X O and a credit of 5,230 cubic yards for material removed with the pavement. The State claimed additional credits for material used for Item 2EF-BRO and Item 2VJ-D. One of the State's witnesses testified that if the material used for these two items were replaced by the claimant, no credit should be allowed to the State. There is support in the record for the findings of the Court of Claims that said material was replaced by claimant and, therefore, in our view, the determination not to credit the State for material used in these two items should not be disturbed.

After the credits were deducted, the court arrived at a figure of 47,738 cubic yards, from which an additional 15,000 cubic yards were subtracted due to the fact that such amount had erroneously been counted twice in the State's earthwork summary. The court also deducted 18,000 cubic yards, finding that said amount of fill was unavailable due to the State's order that the last foot of earth be left in the recharge and retention basins. This finding was amply supported by the record. Subtracting 33,000 cubic yards from 47,738 cubic yards leaves remaining 14,738 cubic yards, and the Court of Claims held the State responsible for 15% of that amount based on a finding that delays necessitated the purchase of the borrow material and based on its previous finding of 15% liability on the part of the State for the delays. Adding 15% of 14,738 cubic yards or 2,211 cubic yards to the 33,000 cubic yards for which the State alone was responsible gives a total of 35,211

cubic yards for which claimant was entitled to payment. Consequently, the Court of Claims did not err in awarding claimant damages for 35,211 cubic yards of borrow material at a price of $1.75 per cubic yard. The award of $61,619.25, plus interest, on the third cause of action should, therefore, be affirmed.

▮ The fourth cause of action stems from the State's withholding of $23,428 from the claimant on the premise that such amount was due the State for engineering and inspection charges. The contract specifications provide that the State may take a deduction for such expenses when the work is not completed on or before the date specified in the contract. In the present case, the work was to be completed on or before December 29, 1971. Although the project was not accepted by the State until January 26, 1973, charges for engineering and inspection expenses were not begun until June 1, 1972. The Court of Claims determined that the State should be held liable for so much of these charges as resulted from delays attributable to the State and thus awarded 15% of $23,428 or $3,514.20, with interest. In this court's opinion, such award was proper and should be affirmed.

The judgment should be modified, on the law and the facts, by decreasing the award on the second cause of action to $312,129.39, for a total award, inclusive of the first, second, third and fourth causes of action, of $380,074.24, together with appropriate interest, and, as so modified, affirmed, without costs.

GREENBLOTT, J. P., STALEY, JR., and MIKOLL, JJ., concur.

Judgment modified, on the law and the facts, by decreasing the award on the second cause of action to $312,139.39, for a total award inclusive of the first, second, third and fourth causes of action of $380,074.24, together with appropriate interest, and, as so modified, affirmed, without costs.