■ TERRY CONTRACTING, INC., Respondent-Appellant, v. STATE OF NEW
YORK, Appellant-Respondent. (Claim No. 46341.) — Cross appeals from a
judgment, entered November 19, 1970, upon a decision of the Court of Claims
which awarded claimant damages for breach of contract. On March 19, 1959,
claimant entered into a contract with the State for the construction of a portion
of Prospect Expressway, Fort Hamilton Parkway Interchange in Brooklyn,
New York. Work began on March 24, 1959, and the contract provided for a
completion date of September 1, 1960. The contract was not completed until
September 21, 1964 and accepted by the State on February 1, 1965. Claimant
filed a claim on March 22, 1966 setting forth seven causes of action, demand-
ing judgment in the sum of $1,369,399.60 alleging interference, extra cost
items, additional quantities, and delays incurred as a result of intervention and
indecision on the part of the State. The first cause of action was disposed of
by means of a Severance Action wherein it was determined that claimant
was entitled to $159,739.16. After a trial of the remaining causes of action,
the Court of Claims awarded the sum of $335,144.71. The State appeals from
those portions of the judgment which (1) awarded claimant $73,345.16 as
damages under paragraph 16(1) of the second cause of action for watchmen
services provided by claimant; (2) awarded claimant $75,108.57 as damages
under the fifth cause of action for the State's interference with the method
of steel sheet piling by prohibiting claimant from using water jetting in driv-
ing such piling; (3) awarded claimant $98,346.55 as damages under the sixth
cause of action for delay caused by the State; (4) awarded claimant $20,205.18
as damages under the seventh cause of action for a credit against engineering
charges deducted by the State. Claimant appeals from so much of the judg-
ment that denied recovery of the full amount of paragraphs 16(c), 16(e),
26(i), and 26(s) under the second and fourth causes of action, and the full
amount alleged to be due under the fifth, sixth and seventh causes of action
for a total increase in damages of $112,298.67. The contract provided for
payment of services for watchmen under Item 76S, "Maintenance and Pro-
tection of Traffic" and Item 516, "Uniformed Watchmen". The Court of
Claims has awarded claimant the sum of $19,500 for services under Item 516,
allegedly performed after December 31, 1961; the sum of $30,400 for services
under Item 76S prior to December 31, 1961; and the sum of $23,445.16 with-
held by the State by reason of the alleged fraud of subcontractor, Sentinel
Investigating Service, by overcharging the State. Claimant's request for an
extension of time to perform this contract was granted by the State on con-
dition that no further payments would be made for Item 516, watchmen ser-
vices, after December 31, 1961. The Court of Claims found that all of the
delay days caused by the State occurred prior to December 31, 1961. Claimant
was paid for such services from September 1, 1960, the completion date in the
contract, until December 31, 1961. The condition attached to the extension of
time granted after December 31, 1961 was reasonable, and the State should
not be charged with watchmen services after that date, and the part of the
judgment awarding damages for that period in the sum of $19,500, under
paragraph 16(1) of the claim, should be reversed. The Public Works Specifica-
tion under Item 76 required claimant to provide watchmen and flagmen for
the protection of traffic, and at least one night watchman for the continuous
patrol of the contract. Under this item, the State deducted 2,027 man days
(one man working eight hours) for watchmen service furnished prior to
December 31, 1961. The State advised claimant, on January 29, 1962, that it
would deduct two man days per day during this period unless claimant could
show that it supplied one watchman during the night hours. The proof at

the trial was contradictory as to the compliance with the night watchman requirement, and the Court of Claims reduced the penalty to 1,014 man days stating that there was no proof introduced justifying the two-for-one approach and, as to the remaining 1,015 man days deducted, the court held that claimant complied only partially with the requirements of Item 76S and allowed half of the number of days deducted, making a total of 1,520 man days to be paid for by the State. We agree that the Court of Claims fairly adjusted this paragraph of the claim, and that part of the judgment awarding $30,400 in damages should be affirmed. As part of its claim under paragraph 16(1) of the claim, claimant seeks to recover the sum of $23,445.16 which the State withheld on the ground that Sentinel Investigating Service, the subcontractor providing uniformed watchmen for claimant, had fraudulently presented claims for services not provided to the project. However, the Court of Claims found, and the testimony supports its finding that the State did not prove that claimant did not provide the services required by the contract. That part of the judgment awarding claimant $23,445.16 for recovery of the amount withheld by the State for such services should be affirmed. In the fifth cause of action, claimant seeks damages for the State's refusal of its request to use water jetting in construction of excavation required for four retaining walls. Both parties agree that the contract, as signed, provided for the use of double sheeting for such excavation. In June of 1959, claimant requested permission to use cantilevered or single type piling. This plan was approved by a district engineer, and claimant began implementation of the plan. Claimant found that the piling could not be driven simply by use of a steam or pneumatic hammer and, therefore, requested the State's permission to use water jetting. Permission for water jetting was denied because it was believed that such procedure was dangerous. The claimant thereupon reverted to the original double piling method without filing a protest or complaining to anyone about the ruling. Claimant asserts that the method used, of double sheeting, was more expensive than single sheeting with water jetting, although the testimony of the State's expert refutes such conclusion. A contractor has the right to determine its means and methods to accomplish performance of the work, provided such are within the framework of the contract. (*Fehlhaber Corp.* v. *State of New York,* 40 A D 2d 881; *Rosoff Bros.* v. *State of New York,* 39 A D 2d 974.) However, the fact that claimant asked permission to change its methods indicates that it regarded water jetting as a change from the procedure agreed to in the contract. The State's expert testified that, in his opinion, water jetting was not a proper method because of possible hazard to existing utilities in the area and that the State's refusal was proper. He testified that never in his knowledge had anyone used water jetting to put down sheet piles in a congested urban area like the subject site. After the State's refusal, claimant made no protest, but reverted to the method of doing the sheeting work as contemplated by the contract. The State's refusal to permit a change of procedure in favor of the conventional method of performing the work, over a method which could be a hazard to the public and surrounding area, should be approved and that part of the judgment which awarded $75,108.57, as damages under the fifth cause of action, should be reversed. The sixth cause of action of the claim specifies numerous items of delay alleged to have been created by the State ranging from delay of access to the claimant for installation of sewer across the schoolyard of Public School 130 to delay in approval of drawings for pumping station. The Court of Claims reviewed the 44 items of delay alleged in Item 29 of the bill of particulars and found 220 overall delay days under items 1, 2, 3, 7, 8, 25, 32, and 42, and further

found that claimant had also been subject to 328 delay days under items 9, 10, 11, 13, 15, 20, 22, 24, 28, 31, and 44.  The court held that many of the last 11 items considered individually were either concurrent with each other or with some of the overall delay days found, and reduced the 328 delay days for those 11 items to 105 additional overall delay days resulting in a total of 325 overall delay days for which the State was responsible.  The Court of Claims awarded damages by dividing the periods of delay into two parts; one from May 3, 1963 to December 31, 1963, and the other from January 1, 1964 to September 21, 1964, and made a total award in the sum of $98,346.55.  The court pointed out that the evidence presented was such that a decision had to be based upon an equitable evaluation of the delay periods, since the claimant was no longer in business and many of its records were unavailable.  Claimant's witness, Mayhew, testified that the delay caused by the State created damages in the sum of $678,413.21 for which the Court of Claims awarded only the sum of $98,346.55.  The court separately considered items of labor, materials and equipment in its evaluation of damages caused by the delay and determined that the 325 days of delay amounted to costs of $85,518.74 in damages, and added 15% for overhead and profit making a total of $98,346.55.  Although the State contends that no award should be made for delay, it also urges that an arbitrary award for overhead and profit was completely erroneous.  However, such an award has been approved in prior claims, and we agree that the trial court's award was proper.  (*D'Angelo* v. *State of New York,* 41 A D 2d 77, app. dsmd. 32 N Y 2d 896.)  Obviously, it is impossible to allocate specific amounts of damages to each item of delay.  The impossibility of establishing a precise formula for computing damages should not prevent claimant from recovering a reasonable amount for its loss caused by the delay.  (*Wescott* v. *State of New York,* 264 App. Div. 463.)  The determination of the Court of Claims applied to determine claimant's damages, we believe, is reasonable and equitable and finds support in the record.  Claimant alleges, in its seventh cause of action, that the State improperly deducted engineering charges, and that the claimant should be awarded the sum of $92,216.20.  The original completion date of September 1, 1960 was extended nine times on application of claimant. In the second and subsequent extensions of time, the State conditioned such extensions upon payment to the State of engineering charges after June 1, 1961.  Since we have approved the finding of delay days chargeable to the State as 325 days and since the overall strike days of 55 should not be chargeable to claimant, it should be entitled to recover for the number of days after June 1, 1961 for which it was not responsible.  Thus, computing 380 days after the completion date of September 1, 1960, the claimant should not be charged with engineering charges for the period of June 1, 1961 to October 15, 1961.  The State, in its brief, sets forth an itemization of engineering charges for the period from June 2, 1961 to October 4, 1961 in the sum of $15,619.65.  We adopt these figures as a fair measure of damages allowable to claimant as a recovery of engineering charges which the State has deducted from the balance due claimant.  Claimant's cross appeal from the Court of Claims denial of paragraphs 16(c) and 16(e) of the second cause of action, and paragraphs 26(i) and 26(s) of the fourth cause of action has no support in the record, and such denials were proper, and we affirm as to these items.  The cross appeal as it relates to the fifth, sixth and seventh causes of action has been discussed previously in this statement and determined as so stated.  The award of damages for item 16(1) of the second cause of action should be reduced to $53,845.16.  The award of damages for the fifth cause of action should be reversed.  The award of damages for the sixth cause of action should be

affirmed. The award of damages for the seventh cause of action should be reduced to $15,619.65. That part of the judgment which awarded damages in the sum of $325,418.40 should be reduced to $226,224.30. Judgment modified, on the law and the facts, by reducing that part of the award in the sum of $325,418.40 to $226,224.30 with appropriate interest, and, as so modified, affirmed, without costs. Staley, Jr., J. P., Cooke, Sweeney, Kane and Main, JJ., concur.