MANSHUL CONSTRUCTION CORP., Respondent-Appellant, v DORMITORY AUTHORITY OF THE STATE OF NEW YORK, Appellant-Respondent.

MANSHUL CONSTRUCTION CORP., Appellant-Respondent, v DORMITORY AUTHORITY OF THE STATE OF NEW YORK, Respondent-Appellant.

First Department, March 10, 1981

APPEARANCES OF COUNSEL

*Michael R. Treanor* of counsel *(Plunkett & Jaffe, P. C.,* attorneys) for defendant.

*Gary M. Axenfeld* of counsel *(Thomas S. Finegan* with him on the brief; *Baskin & Sears,* attorneys) for plaintiff.

OPINION OF THE COURT

SILVERMAN, J.

This action arises out of a construction contract whereby plaintiff Manshul Construction Corp. contracted to do certain work for defendant Dormitory Authority of the State of New York (DASNY) in connection with La Guardia Community College, a division of the City University of New York.

Plaintiff's complaint had three causes of action—the first for balance due under the contract, the second for reasonable value of extra, changed and/or additional work, and the third for damages essentially for delay due to defendant's failure to provide adequate access to the job site, proper information, proper drawings and plans, failure to co-ordinate the work of other contractors, etc. Defendant counterclaimed for delay damages and for fair and reasonable value of work not performed by plaintiff, and work deleted from the contract.

After a six-week nonjury trial in which the court painstakingly went into the many claims, the court awarded plaintiff $259,754 on the first cause of action, being essentially full recovery on that cause of action; $212,149 on the second cause of action; and $160,639 on the third cause of action; and the court allowed to defendant a credit of $105,750 on its counterclaim for work deleted or not per-

formed, said credit being applied against the award to plaintiff on the second cause of action. In addition, pursuant to a stipulation of partial settlement, the judgment awarded to plaintiff recovery on various items of extra work in stipulated amounts.

Both parties have appealed from the judgment. The issues on this appeal relate essentially to interest, and to the third cause of action for delay damages.

■ (1) *Interest on credits to defendant.* The trial court awarded to plaintiff sums of money on its first cause of action for contract balance, on its second cause of action for extras, and on its third cause of action for damages for delay, in each case with interest to the date of the decision. The court also awarded to defendant $105,750.91 for credits due for work deleted or not performed, but no predecision interest was awarded on this item. In the judgment, this $105,750.91 without interest, was simply subtracted from the total of $768,809.42 (which included predecision interest) awarded to plaintiff, and a net award was made to plaintiff of the difference, $663,058.51, together with interest from the date of decision. But the correct net amount actually owed by defendant to plaintiff is of course only the gross amount of plaintiff's claim, as allowed, *minus the credits allowed to defendant;* and predecision interest should be allowed to plaintiff only on that net amount. The credits for work deleted or unperformed would seem logically most closely related to the amount allowed to plaintiff on the first cause of action as contract balance due. Indeed the contract provides that where changes are made altering, adding to or deducting from the work, the contract sum shall be adjusted accordingly. We therefore direct that the $105,750.91 credited to defendant be applied against the $259,754.29 awarded to plaintiff on its first cause of action, and that predecision interest on the first cause of action be allowed only on the net balance of $154,003.38.

(2) *Rate of prejudgment and predecision interest.* Chapter 585 of the Laws of 1939 provides that the rate of interest to be paid by a "public corporation" upon "any judgment or accrued claim" shall not exceed 4% per annum. The trial court agreed that defendant is a public corporation, and therefore allowed only 4% per annum as postjudgment

interest rather than 6% per annum. But prejudgment interest has been calculated at 6%. We hold that prejudgment interest must also be calculated at 4% per annum. The statute is applicable not only to judgments but to "accrued" claims. The prejudgment interest awarded was for the most part from dates after the completion of the work and just about the commencement of the action, thus the claims could fairly be deemed accrued as of those dates. The most likely significance of the use of the phrase "accrued claim" in the statute is to avoid an interpretation that interest is payable on nonaccrued claims. In any event, it would not make sense for the statute to be interpreted to mean that a 4% rate of interest should be applicable for the period after the claims are established but a higher rate of interest should be charged for the period before the claims are established and while they are still disputed.

(3) *The Cord-Wall—dry wall subcontractor claim.* Paragraph (mm) of the judgment allows $13,681, with interest thereon, to Manshul, purportedly on account of its third cause of action for delay relating to the dry wall subcontractor. In fact, it is clear that this figure represents the amount of work that the dry wall subcontractor alleged that it had done that was extra to the contract. Concededly, there was no claim by the dry wall subcontractor directly for extra work. Insofar as such extra work was claimed to have been done by the dry wall subcontractor and allowed by the court, it was included in other direct claims allowed by the court for extras, e.g., items (p) and (ff) of the judgment, and thus its allowance represents a duplication of those items. The court appears to have found (p) and (ff) to be well documented whereas, the amount in (mm), though a larger sum than items (p) and (ff), was merely the amount that the subcontractor estimated as the value of its extra work. As plaintiff has the burden of proof, we accept the documented claims in items (p) and (ff) and we strike item (mm). As to the subcontractor's claim for delay, the trial court thought it was "grossly exaggerated", speculative and not supported by the preponderance of the credible evidence. We agree. There was no showing that the delays suffered by the subcontractor were the defendant's responsibility.

(4) *Damages for delay*. The third cause of action claims damages for breach of contract, including damages for delay.

On this cause of action, the court awarded:

(i) $143,325 overhead and profits as delay damages (item [kk] of the judgment).

(ii) $3,633 in connection with the claim of the door manufacturer (item [ll] of the judgment).

(iii) $13,681 relating to the dry wall subcontractor (item [mm] of the judgment).

The last of these items has been discussed and stricken above.

The second item is apparently not questioned by the parties and will not be discussed further by us.

We shall discuss primarily the first item, including plaintiff's claim that the award should have been much larger and defendant's claim that it should have been much smaller or nothing.

As in all contract actions, the burden of proving the damages is on plaintiff. *(Berley Inds. v City of New York,* 45 NY2d 683, 686.) When claims are made for damages for delay, plaintiff must show that defendant was responsible for the delay; that these delays caused delay in completion of the contract (eliminating overlapping or duplication of delays); that the plaintiff suffered damages as a result of these delays; and plaintiff must furnish some rational basis for the court to estimate those damages, although obviously a precise measure is neither possible nor required. *(Rusciano Constr. Corp. v State of New York,* 37 AD2d 745; *Bero Constr. Corp. v State of New York,* 27 AD2d 974; *Tully & DiNapoli v State of New York,* 34 AD2d 439, 441; *Fehlhaber Corp. & Horn Constr. Co. v State of New York,* 69 AD2d 362, 369; *Rao Elec. Equip. Co. v State of New York,* 36 AD2d 1019.)

Defendant contends that while it has been shown that defendant was responsible for some delays, plaintiff was also responsible for some delays, and there has been a complete failure of proof as to which delays and breaches resulted in delays of completion of the contract, or as to

whether plaintiff was damaged thereby, or as to any basis for estimating such damages. The trial court found "that the delay on this project was solely caused by DASNY and its agents and was not contributed to by MANSHUL." It appears clear that at least some delay is attributable to plaintiff. It is equally clear that the court thought that the delay attributable to plaintiff was such a small proportion of the total delay that the court could disregard it. We think it would be more proper to allocate 95% of the delay to defendant and 5% to plaintiff.

More difficult are the questions of whether there is an adequate showing that Manshul was damaged by the delay, and the measure and amount of damages, if any. On these questions, plaintiff's claims are largely vitiated by the fact that the trial court found the plaintiff's evidence as to delay damage largely not credible. The trial court said that plaintiff's claim was grossly exaggerated, and parts of it were illusory, based on double billing, invited unfounded speculation, and not supported by the preponderance of the credible evidence. Plaintiff has not persuaded us that these criticisms are incorrect.

Plaintiff urged essentially three categories of delay damage: labor inefficiency, extended field costs, and home office overhead.

*Labor inefficiency.* As to the first of these items, labor inefficiency, $354,445, the trial court said that this was "a clear instance of double billing by MANSHUL" and illusory.

Furthermore, it appears that Manshul's calculations of labor inefficiency damage were arrived at by a comparison of its precontract estimate (perhaps only a partial estimate) of what its labor cost would be and what Manshul claimed its labor cost actually turned out to be. Claims of damage based on precontract estimates are impermissible. (*Mount Vernon Contr. Corp. v State of New York*, 56 AD2d 952; *Whitmyer Bros. v State of New York*, 63 AD2d 103, 108, affd 47 NY2d 960.) We are not persuaded that the trial court was wrong in rejecting the separate item of labor inefficiency.

*Extended field costs.* Under extended field costs, Manshul

claimed the cost of the telephone maintained on the site for a year after the scheduled completion date, $1,760; the cost of having tools and truck on the project for an extra year, $44,800; and the salary of the supervisor on the job for an extra year, $46,280. It is not clear that these items also are not duplications and are not at least in part included in the allowed claims for either extra work (second cause of action), or the stipulated items or contract balance (first cause of action), to the extent that they are valid. Nor does the fact that these items were incurred after the scheduled completion date necessarily mean that they were additional. As to the item of damages due to retention of tools and truck on the site, we note that the tools item was simply estimated at 10% of the labor; but it was precisely to the claim of additional labor costs that the trial court directed its severest criticisms of exaggeration and duplication. We are not satisfied that the trial court was wrong in not allowing these items, especially in view of plaintiff's burden of proof and the trial court's finding that the claim was so grossly exaggerated and duplicative.

*Home office overhead and profit.* The court allowed $143,325 as a delay damage figure consisting essentially of an award for home office overhead and profit during the delay period.

Of course plaintiff has the burden of proving there was in fact an increase in home office overhead. *(Berley Inds. v City of New York*, 45 NY2d 683, 687, *supra.)* The court found there was such an increase. And unlike the *Berley* case *(supra)*, there was evidence in the present case that the delay precipitated engineering or design problems that called for central staff consideration. We are inclined to accept the court's finding that there was such damage.

Plaintiff urged that such damage should be calculated on the basis of the so-called *Eichleay* formula (from *Eichleay Corp.* [60-2 Board of Contract Appeals Decisions, par 2688 (CCH)]). But the propriety of that formula has been cast into serious doubt by the Court of Appeals decision in the *Berley* case *(supra)*. In any event, the trial court found that its application in the present case resulted in a wholly unrealistic figure. Compare *G.R.F., Inc. v Board of Assessors of County of Nassau* (41 NY2d 512, 515): "Pragma-

tism, however, requires adjustment when the economic realties prevent placing the properties in neat logical valuation boxes".

The trial court arrived at its figure by taking the payment requisitions for the delay period as indicating that in the delay period Manshul completed approximately 14% of the project, for which it submitted payment requisitions totaling $895,785. The court said that pursuant to the contract Manshul was allowed 15% for overhead and profit and an additional 1% for bond premium. Multiplying the $895,785 by this 16% the court arrived at a figure of $143, 325 which it awarded as damages for delay.

■ We are unable to accept this as an appropriate measure of damages.

In principle, it appears to us that the court employed a reasonable method for calculations of these damages to the extent that it keyed its estimate of additional delay overhead expressly to the amount of work done in the delay period. It thus avoided the criticism of the *Eichleay* formula by the Court of Appeals in the *Berley* case (45 NY2d 683, 689, *supra*), that that formula bases overhead, in part, on the portion of the work which had not been delayed.

However, we think that the trial court's calculation requires adjustments in certain particulars:

(a) To begin with, it does not appear that the contract included 1% for bond premium. The main contract simply fixed a gross price; the 15% figure appears in the contract only with respect to change orders and extra work; and even there, there is no provision for an extra 1% for bond premium. (Indeed, in the unamended general conditions of the contract there is a specific provision that the 15% shall cover "cost of supervision, overhead, *bond*, profit and any other general expense".) (Emphasis supplied.)

(b) A percentage above direct costs has frequently been allowed for overhead and profit in allocating compensation on a *quantum meruit* basis in construction contract cases. *(Whitmyer Bros. v State of New York*, 47 NY2d 960, 962, affg 63 AD2d 103; *Fehlhaber Corp. & Horn Constr. Co. v State of New York*, 69 AD2d 362, 368, *supra.)* Where ex-

cess direct costs due to delay are shown, such an allowance for overhead and profit *based on such excess direct costs* has been made, in addition of course to the award of the excess direct costs. *(Fehlhaber Corp. & Horn Constr. Co. v State of New York, supra,* at p 372; *Terry Contr. v State of New York,* 42 AD2d 619, 621.)

But in the present case, we have no figure of cost; the $895,785 is presumably the *contract price,* not merely the contractor's cost, for the work done after the scheduled completion date. And we have no figure for *excess* direct cost due to delay. We think it is possible to arrive at an estimate of direct cost for work done during the delay period, but we have no basis for an estimate of *excess* direct cost due to delay (over what the cost would have been but for the delay).

(c) As the $895,785 is a contract price, it presumably already includes an allowance for overhead and profit above estimated direct cost. It is therefore arguable that to allow an additional 15% for overhead and profit is a duplication. With respect to overhead, however it is arguable that the overhead theoretically included in the contract price is overhead incurred before the scheduled completion date, and that thus with respect to work done after the scheduled completion date, the overhead has *pro tanto* been incurred again, and therefore an additional overhead award may be justified. (See, e.g., *Fehlhaber Corp. & Horn Constr. Co. v State of New York,* 65 AD2d 119, 130, "The fixed costs and overhead were, in fact, incurred twice.") We cannot see however why a second full *profit* on the direct cost should be allowed as part of damages for this work, nor why the profit allowance presumably included in the contract price for the work done during the delay period should itself form a basis upon which a further percentage of profit should be allowed.

We therefore think that the trial court's calculation for delay damages based on overhead and profit should be modified to a calculation along the following lines:

(i) Estimate the actual cost of the work done after the scheduled completion date by deducting from the contract price the portion allocable to overhead and profit.

(ii) Allocate a percentage of this cost for overhead, and allow this as excess overhead due to delay.

(iii) Add to this a profit percentage based on this excess overhead.

(iv) Award 95% of the figure thus arrived at (the sum of [ii] and [iii]) to plaintiff as delay damages.

We proceed to apply this method:

(i) If we assume, as seems reasonable, that the overhead and profit portion of the contract price is 15% of the cost, we may estimate the direct cost as 100/115, or approximately 87% of the contract price. $895,785 × 100/115 gives $778,943 as an estimated direct cost of work done after the scheduled completion date. (This is essentially the method used by the Appellate Division, Third Department, in its effort to arrive at the base cost from the contract price in *Fehlhaber Corp. & Horn Constr. Co. v State of New York* (69 AD2d 362, 372, n 4, *supra.*)

(ii) Taking 15% as the allowance for overhead and profit, we must somehow divide this 15% between overhead and profit.

We note, as did the trial court, that to some extent we are dealing with arbitrary figures for arriving at overhead and profit. The trial court said: "This application of an arbitrary figure has been accepted in a series of cases arising from a construction contract in the absence of proof of a mathematical basis for computing damages. *D'angelo v. State of New York*, 41 A. D. 2d 77 (3rd Dept. 1973); *Terry Contracting, Inc. v. State of New York*, 42 A. D. 2d 619 (3rd Dept. 1973); *Public Constructors, Inc. v. State of New York*, 55 A. D. 2d 368 (3rd Dept. 1977)." (Accord *Westcott v State of New York*, 264 App Div 463, 465-466, "In addition an arbitrary allowance of fifteen per cent for overhead and profit has been made which likewise is sustainable in the absence of a mathematical basis for the computation of damages.") However, the reported cases do give us some broad indications for division between overhead and profit. It has been said that "an allowance of 10% for overhead has been found to be fair and reasonable compensation". *(Fehlhaber Corp. & Horn Constr. Co. v State of New York*, 65 AD2d, at p 130.) There have been cases involving a 10%

overhead and a 5% fee. *(Matter of International Aviation Servs. of N.Y. v Flagsim Co.,* 43 AD2d 971.) In its brief in this court with respect to its claim for extended field costs, plaintiff has suggested that the profit factor should be 10%; this would only leave 5% for overhead. Many cases have involved an equal percentage for overhead as for profit (see e.g., *Fehlhaber Corp. & Horn Constr. Co. v State of New York, supra,* at p 129). Thus in *Fehlhaber Corp. & Horn Constr. Co. v State of New York* (69 AD2d 362, 372, *supra),* the figure used in the contract bid was 5.46% of direct cost for overhead, and once overhead was added to direct cost, an additional 5.46% for profit.

On balance, we think that we should allow the same percentage for overhead as for profit, calculating profit, however, on a figure which includes the overhead, and fixing the percentage so that the total add-on for overhead and profit shall be 15%. An allowance of approximately 7.25% each for overhead and profit will do this, i.e., $.0725 + (1.0725 \times .0725) = .15025$, or just over 15%.*

Seven and one-quarter per cent of $778,943 is $56,473, which we determine to be the additional overhead due to delay.

(iii) As we have said, plaintiff is not entitled to a duplicative profit based on the direct cost of the work done during the delay period or on the profit portion of the contract price. But plaintiff is entitled to a profit based on the additional expense, i.e., the additional overhead figure of $56,473; 7.25% of $56,473 is $4,094, which we determine as profit on the additional overhead.

The sum of these overhead and profit figures, $60,567, is what we determine to be the overhead and profit damage due to delay.

(iv) As we have determined that plaintiff is responsible for 5% of the delay, we award plaintiff 95% of this figure, or $57,538, as damages for delay. This figure represents our best effort to arrive at a rational and just allocation of damages, bearing in mind the generally acknowledged im-

---

* This method of calculation was also used in *Fehlhaber Corp. & Horn Constr. Co. v State of New York* (69 AD2d 362, 372, n 3, *supra).*

possibility of precision in the determination of such damages. *(Westcott v State of New York*, 264 App Div, 463, 464, *supra; Rusciano Constr. Corp. v State of New York*, 37 AD2d 745, 747, *supra; Terry Contr. v State of New York*, 42 AD2d 619, 621, *supra;* cf. *Berley Inds. v City of New York*, 45 NY2d 683, 687, *supra; Hehlhaber Corp. & Horn Constr. Co. v State of New York*, 65 AD2d 119, 127, *supra; Public Constructors v State of New York*, 55 AD2d 368.)

The judgment of the Supreme Court, New York County (WOLIN, J.), entered January 11, 1980, as corrected by order entered March 18, 1980, should be modified, on the law and the facts, by (a) directing that the $105,750.91 credited to defendant on its second counterclaim for work deleted or not performed be applied against the $259,754.29, awarded to plaintiff on its first cause of action, and that interest be allowed only on the net balance of $154,003.38; (b) directing that predecision and prejudgment interest be calculated at 4% per annum rather than 6% per annum; (c) striking item (mm) of the judgment; (d) amending item (kk) of the judgment to allow on account of Manshul's claim for damages for delay, the sum of $57,538 with interest thereon from December 1, 1977; and (e) amending the totals of awards and interest in the judgment in accordance with the foregoing modifications; and the judgment should otherwise be affirmed, without costs. Findings of fact inconsistent herewith should be reversed and new findings of fact made in accordance with this opinion.

MURPHY, P. J., SULLIVAN, LUPIANO and YESAWICH, JJ., concur.

Judgment, Supreme Court, New York County, entered on January 11, 1980, as corrected by order entered on March 18, 1980, modified, on the law and the facts, by (a) directing that the $105,750.91 credited to defendant on its second counterclaim for work deleted or not performed be applied against the $259,754.29, awarded to plaintiff on its first cause of action, and that interest be allowed only on the net balance of $154,003.38; (b) directing that predecision and prejudgment interest be calculated at 4% per annum rather

than 6% per annum; (c) striking item (mm) of the judgment; (d) amending item (kk) of the judgment to allow on account of Manshul's claim for damages for delay, the sum of $57,538 with interest thereon from December 1, 1977; and (e) amending the totals of awards and interest in the judgment in accordance with the foregoing modifications; and the judgment is otherwise affirmed, without costs and without disbursements. Findings of fact inconsistent are reversed and new findings of fact made in accordance with this court's opinion.