**Henick-Lane, Inc. v 616 First Ave. LLC**

2024 NY Slip Op 34283(U)

December 4, 2024

Supreme Court, New York County

Docket Number: Index No. 161465/2019

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     HON. PAUL A. GOETZ                              PART                    47
                                                  *Justice*

-------------------------------------------------------------------------X

HENICK-LANE, INC.,                                    INDEX NO.           161465/2019

                                                      MOTION DATE         12/29/2023
                              Plaintiff,
                                                      MOTION SEQ. NO.        005
                    - v -

616 FIRST AVENUE LLC, 616 FIRST AVENUE
DEVELOPER LLC, JDS CONSTRUCTION GROUP LLC,            **DECISION + ORDER ON**
JOHN DOE NUMBERS ONE THROUGH TEN                              **MOTION**

                              Defendants.

-------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 005) 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202

were read on this motion to/for            PARTIAL SUMMARY JUDGMENT            .

In this action to foreclose on a mechanic's lien, defendants[1] move pursuant to CPLR § 3212 for partial summary judgment seeking a declaration that plaintiff is contractually barred from recovering certain categories of damages it seeks.

## BACKGROUND

616 First Avenue LLC (the owner) owns the property located at 626 First Avenue, New York, NY 10016 (the premises) (NYSCEF Doc No 1 ¶ 5). The owner hired JDS Construction Group LLC (JDS) to perform construction management services for the development and construction of a new, dual-tower residential skyscraper at the premises (*id.* ¶ 6; NYSCEF Doc No 6). It also designated 616 First Avenue Developer LLC (the developer) to assist in management and supervision (*id.* ¶ 7). JDS entered into a subcontract with plaintiff Henick-Lane

---

[1] The "John Doe" defendants represent those persons and entities who may have subsequent and/or subordinate interests in the lien being foreclosed.

**161465/2019   HENICK-LANE, INC. vs. 616 FIRST AVENUE LLC**                              **Page 1 of 14**
**Motion No.  005**

Inc. (HLI, or plaintiff) whereby plaintiff agreed to supply and install an HVAC system (the project) (*id.* ¶ 8). The base payment was set at $19.6 million (*id.* ¶ 8-9) but this amount could be increased to account for any additional work or charges, provided they were properly set forth in change orders (COs) (*id.* ¶ 11; NYSCEF Doc No 134)[2].

Plaintiff alleges that it fully and satisfactorily performed all its duties under the subcontract, but JDS did not remit full payment for base-contract work and additional work (*id.* ¶ 11). Plaintiff also alleges that it "suffered significant losses [due to] Defendants' delays and interferences . . . which resulted in [a 43-month] delay" in completing the project (NYSCEF Doc No 29 ¶¶ 18-19). On September 25, 2019, plaintiff filed a lien against JDS for $2.6 million (NYSCEF Doc No 1 ¶ 13). Defendants allege that "a portion of the [plaintiff's] Work was deficient and had to be corrected[], costing approximately $175,000 to remediate" and that plaintiff filed "a willfully exaggerated lien in a wrongful attempt to coerce JDS and 616 into paying HLI money that HLI is not legitimately owed" under the terms of the subcontract (NYSCEF Doc No 6).

Plaintiff's causes of action are for (i) foreclosure of the mechanic's lien as against all defendants, (ii) breach of contract as against JDS, and (iii) delay damages against all defendants (NYSCEF Doc Nos 1, 29). JDS brings a counterclaim for breach of the subcontract, and the owner brings a counterclaim for willful exaggeration of the lien (NYSCEF Doc No 6).

## DISCUSSION

Procedural Issues

Plaintiff argues that defendants' motion must be denied because it is procedurally defective for three reasons. First, plaintiff notes that defendants introduce evidence by way of an

---

[2] The mechanic's lien reflects that the total was increased to $23,765,134.59 (NYSCEF Doc No 2), but defendants claim that it was increased to $24,169,776.96 (NYSCEF Doc No 6 ¶ 11).

[* 2]

affidavit of attorney (NYSCEF Doc No 127), rather than someone with personal knowledge of the facts. However, "the fact that supporting proof was placed before the court by way of an attorney's affidavit annexing deposition testimony and documentary evidence, rather than by affidavits of fact on personal knowledge, [does] not defeat [a defendant's] entitlement to summary judgment" (*Ellman v Village of Rhinebeck*, 41 AD3d 635, 636 [2nd Dept 2007]; *Gaeta v New York News*, 62 NY2d 340, 350 [1984]; *Blazer v Tri-County Ambulette Serv.*, 285 AD2d 575, 576 [1st Dept 2001]). Additionally, while the depositions are unsigned, they were certified by the court reporters and plaintiff did not challenge their accuracy (*Lee v Mason*, 139 AD3d 807, 807 [2nd Dept 2016] ["the Supreme Court should have considered the unsigned deposition transcript [] since it was certified by the court reporter and Mason did not challenge its accuracy"]). Second, plaintiff notes that defendants failed to attach the pleadings to their motion but "the court has discretion to overlook the procedural defect of missing pleadings" where, as here, "the record is sufficiently complete" (*Washington Realty Owners, LLC v 260 Wash. St., LLC*, 105 AD3d 675, 675 [1st Dept 2013] [internal quotation marks omitted]). Finally, plaintiff argues that defendants' statement of undisputed facts should be stricken because several of its paragraphs contain subparagraphs or multiple statements (NYSCEF Doc No 126). Plaintiff offers no support for its position that subparagraphs and multiple statements are disqualifying defects. Therefore, since there are no procedural impediments, the merits of defendants' motion will be considered.

Summary Judgment

"It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Pullman v Silverman*, 28 NY3d 1060,

1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [internal citations omitted]). "Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action" (*Cabrera v Rodriguez*, 72 AD3d 553, 553-554 [1st Dept 2010], citing *Alvarez*, 68 NY2d at 342).

"The court's function on a motion for summary judgment is merely to determine if any triable issues exist, not to determine the merits of any such issues or to assess credibility" (*Meridian Mgmt. Corp. v Cristi Cleaning Serv. Corp.*, 70 AD3d 508, 510-511 [1st Dept 2010] [internal citations omitted]). The evidence presented in a summary judgment motion must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co.*, 153 AD3d 427, 428 [2017], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]) and bare allegations or conclusory assertions are insufficient to create genuine issues of fact (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*id.*).

Defendants argue that plaintiff's claims for (i) delay damages and additional on-site management expenses (CO #252), (ii) the provision and installation of riser/piping offsets (CO #251), and (iii) premium overtime (CO #100) are all barred by the terms of the contract.

*(i)*      *Delay Damages & Additional On-Site Management Expenses (CO #252)*

Plaintiff alleges that it has been damaged in the amount of at least $4,458,383.24 due to various delays and interferences caused by defendants impacting the project to such an extent that it was completed 43 months later than planned (NYSCEF Doc No 29, ¶¶ 54-59). Plaintiff

[* 4]

therefore had to pay its workers longer than it expected, resulting in approximately $790,000 in damages (*id.* ¶ 40).

Defendants first argue that "the amounts HLI seeks in its Third Cause of Action [for delay damages] are duplicative with the amounts demanded in its Proposed Change Order No. 252," which essentially "seeks compensation because the Project was not completed when HLI expected," and thus both are barred by the "no-damages-for-delay clause" (NYSCEF Doc No 125), which provides:

> § 25(a) <u>Delays</u>. "Should Contractor be delayed or disrupted by fault of Construction Manager, Architect, or any other contractor, [] then the time fixed for the completion of the Work shall be extend for a period equivalent to the time actually lost, in the discretion of Construction Manager.[3] Construction Manager shall not be held responsible, or liable for damages, nor shall an increase in the Contract Price be permitted, for any loss or damage sustained by Contractor through delay, inefficiency or disruption caused by Construction Manager, Architect or any other contractor, [] or by any other cause . . . "

NYSCEF Doc No 134.

Defendants note that, in light of the First Department decision and order reversing the dismissal of plaintiff's third cause of action for delay damages, whether plaintiff is entitled to delay damages depends on the parties' intent in making the handwritten addition to the contract. Defendants argue that the purpose of the handwritten modification was not to automatically entitle plaintiff to additional compensation for delays but to promote negotiations and prevent unilateral demands. Defendants assert that this is exactly what plaintiff did; plaintiff allegedly

---

[3] Here, there is a handwritten addition: "and compensated for additional, mutually agreed to costs." By decision and order dated November 24, 2021, plaintiff's claim for delay damages was dismissed because "the handwritten notation [] does not create an ambiguity or contradict the numerous 'no damages for delay' clauses in the contract" (MS #4, NYSCEF Doc No 91). The First Department reversed, finding that "[t]he handwritten amendment to the no-damages-for-delay clause renders the clause ambiguous as to whether plaintiff is entitled to be compensated for costs incurred as a result of such delays, which requires discovery to discern the parties' intent" (NYSCEF Doc No 111).

demanded payment without providing any supporting documentation for the costs it sought or giving the owner and JDS a reasonable opportunity to engage in negotiations to mutually agree on the appropriate compensation. Finally, defendants argue that plaintiff failed to satisfy all conditions precedent in order to recover for delay damages; namely, plaintiff allegedly failed to provide proper and timely notice of delay and supporting documentation.

Plaintiff argues that defendants inappropriately conflate CO #252—which "seeks to recover costs associated with additional onsite management," as plaintiff needed to "compensate[] for all that additional salary and expense related to those employees," specifically supervisory staff, who remained working on the project long past the intended end date—with its delay claims, which relate to "the extended shop drawing process; excessive coordination; response time for field issues[,] as well as hoist delays, power outages and delivery delays" (NYSCEF Doc No 187). Plaintiff also argues that its cause of action for delay damages cannot be dismissed on summary judgment because the intent of the handwritten modification is a matter for the factfinder to determine at trial (citing *NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 61 [1st Dept 2008]), and issues of fact remain as to whether plaintiff provided adequate notice of the delays in compliance with § 25(b) of the subcontract.

HLI president Ernest Henick states that plaintiff "provided JDS with Change Order No. 252" (NYSCEF Doc No 174), however, no such change order has been submitted on this motion. It appears that CO #252 is only memorialized in a line item in the "Master CO Log" (NYSCEF Doc No 184 [with the description "Additional Management on site"]) and in an email from Henick to JDS dated January 26, 2018, in which Henick elaborates:

> "Management supervisory costs [are] at least $790,000 after discounting—we were given a document that showed project completion at the end of first quarter of 2016. Two years later, we are still on the job. Again, I don't know how to figure a job when

> my line item for supervision includes 16 to 24 months of
> supervisory costs for three guys, but it takes over 40 months for
> mostly five guys . . . I gave an additional six months of all their
> time and started the clock at the beginning of the 3rd quarter of
> 2016 and still have cost totals that exceed $1MM that I have
> nowhere to put . . ."

(NYSCEF Doc No 155). Even without an itemized change order to review, it is clear from

plaintiff's opposition and Henick's email that the costs sought in CO #252 are, in fact, delay

damages. As plaintiff acknowledges, it was "[b]ecause HLI was required to stay on the Project

for 'another year and a half, two years,' [that] HLI submitted Change Order No. 252 [to] be

'compensated for all that additional salary and expense related to those employees'" who worked

beyond the projected completion date (NYSCEF Doc No 187). "[T]he salary of the supervisor on

the job for an extra year . . . after the scheduled completion date" is considered a "categor[y] of

delay damage" (*Manshul Constr. Corp. v Dormitory Authority of New York*, 79 AD2d 383, 389

[1st Dept 1981]; see also *Five Star Elec. Corp. v A.J. Pegno Constr. Co., Inc.*, 205 AD3d 572,

572 [1st Dept 2022] [considering labor costs as delay damages]). Defendants have demonstrated

that CO #252 seeks delay damages and is therefore duplicative of plaintiff's third cause of

action, and plaintiff failed to raise an issue of fact as to whether these damages were for "extra

work" rather than delayed work. Therefore, defendants cannot be held liable for payment of CO

#252.

This leaves the question of whether defendants can nevertheless be held liable for delay

damages in general (which may encompass the "additional management on site" charges sought

in CO #252). While the First Department held that plaintiff's third cause of action for delay

damages could not be dismissed without additional discovery "to discern the parties' intent" in

making "[t]he handwritten amendment to the no-damages-for-delay clause" (NYSCEF Doc No

111), here, a separate threshold issue is raised: defendants assert that plaintiff failed to provide

the proper notice of delay under § 25(b) of the subcontract to trigger plaintiff's right to recover for delay damages under § 25(a). The subcontract provides:

> § 25(b) <u>Notice of Delay</u>. "Within seven (7) calendar days after the inception of the cause or causes of the delay, Contractor shall provide Construction Manager, in writing, with a detailed explanation of the nature and extent of the delay . . . Contractor's timely satisfaction of all of the requirements set forth herein is a condition precedent to its entitlement to any right or remedy regarding the delay of its Work and its failure to satisfy all said requirements constitutes an express waiver of any such entitlement."

NYSCEF Doc No 134. Thus, the language is clear that entitlement to recover delay damages is conditioned on timely satisfaction of the notice requirements, yet the communications between the parties submitted by defendants do not reflect plaintiff's satisfaction of those requirements. In opposition, plaintiff broadly asserts that it "submitted a series of emails to JDS, over several months, outlining ongoing Project delays caused by JDS" but fails to pinpoint the relevant communications and show how they correspond to each delay and their attendant costs (NYSCEF Doc No 187). Therefore, plaintiff failed to raise an issue of fact as to whether it provided the appropriate notice with supporting documentation within seven days of the delays at issue to trigger any potential remedies under § 25(a) of the contract.

Accordingly, plaintiff is not entitled to recover for delay damages or for the costs associated with CO #252.

    (ii)    *Riser/Piping Offsets (CO #251)*

Plaintiff alleges that JDS did not convey the need for piping offsets (a mechanism/ method for redirecting a pipe's horizontal alignment) or riser offsets (a mechanism/method for redirecting a pipe's vertical alignment), and as a result, plaintiff spent $418,869 in providing and installing additional offsets (NYSCEF Doc No 154).

[* 8]

Defendants argue that plaintiff is not entitled to recover the costs of its purported additional offsets because the subcontract provided that plaintiff would provide all labor and equipment needed "to complete the Work in accordance with the plans, drawings, details and specifications," and that plaintiff is responsible for "any work that can or could be reasonably inferred by the plans, drawings details and specifications" (NYSCEF Doc No 134 § 1). Defendants note that Rider D, which outlines the scope of the work, obligates plaintiff to provide any piping necessary to complete the project, and specifically references offsets (NYSCEF Doc No 135). Defendants also refer to the mechanical general conditions—a document detailing plans and specifications that was incorporated into the agreement by reference (NYSCEF Doc No 126 ¶ 25)—which provides that plaintiff must furnish all labor and materials "and incidental work and appurtenances required to furnish a complete and properly operating system," and caution that the drawings "are not intended to specify every offset, fitting and component" but rather "to indicate systems concept, the main components of the systems, and the approximate geometric relationships" (NYSCEF Doc No 137 §§ 1.1[C], 1.6[D]). From this, defendants argue, plaintiff should have inferred that it would be responsible for furnishing and installing all offsets as needed to provide a complete operating system. Defendants assert that plaintiff was simply negligent in failing to consider all of these costs in its overall estimate.

Plaintiff argues that the installation of offsets could not be reasonably inferred from the plans as evidenced by HLI director of estimating David LaPoma's testimony that he did not understand that the building floor plates were offset from the floor below or floor above because "[i]t was not shown on the mechanical drawings [or] floor plans" and "there's nothing indicated on the drawing to imply that there's an offset" (NYSCEF Doc No 131, 29:22-30:7, 99:7-12, 112:17-113:19). Plaintiff also refers to a bid leveling document which indicates that only six

[* 9]

offsets were contemplated (NYSCEF Doc No 183 ["Contractor to include Six (6) Pipe off-sets for each building"]). Plaintiff asserts that it did not negligently submit its bid for the project, as even the engineer did not realize the extent of the offset needs until installation had already begun, and there were discrepancies in JDS-approved documents which affected the bid estimate.

The subcontract repeatedly establishes that plaintiff carries the burden of determining what labor and materials are necessary to complete the project and factoring the attendant costs into its bid estimate (*see, e.g.*, NYSCEF Doc Nos 134 §§ 1 ["Contractor shall provide for the Project all the labor [and] materials . . . necessary . . . to complete the Work"; "Contractor shall be responsible for any work that can or could be reasonably inferred by the plans, drawings, details and specifications it being the intent of the parties that Construction Manager is not bound by any mistake or omission in same"; "Contractor shall perform[] all work commonly performed by this trade, whether or not shown on the plans"], 4 ["Contractor shall furnish, without extra charge, all work and materials not mentioned or shown, but generally included under this class of contract, necessary for the proper execution and completion of the Work"]; 135 § B.1 ["the drawings are diagrammatic and not complete in every detail"]). With respect to piping, the subcontract states that while "the drawings are . . . not complete in every detail," they "indicate the various piping, duct and electrical systems schematically"; "[n]o added compensation will be permitted due to field conditions, coordination and complete functional systems [as] Contractor is familiar with the intent of Drawings and Specifications"; and "Contractor shall be responsible for providing <u>all</u> work related to . . . the work of this Contract, including, but not limited to . . . Pipe[s]" (NYSCEF Doc No 135 § B [emphasis in original]; *see also* NYSCEF Doc No 137 [stating that the drawings "are *not intended to specify every offset,* fitting and component"]

[* 10]

[emphasis added]). Furthermore, Rider D, which post-dates the bid leveling document cited by plaintiff, contemplates that the project required a *minimum* of six "offsets vertically for Pipe" (*id.* ¶ 75). Taken together, it can be reasonably inferred from the agreement that plaintiff is responsible for installing as many offsets as necessary to provide a functional piping system, at no additional cost to defendants.

Accordingly, plaintiff is not entitled to recover the costs associated with CO #251.

### (iii) *Premium Overtime (CO #100)*

In CO #100, dated October 19, 2016, plaintiff seeks to recover $543,395 spent on 13,666.5 hours of overtime work performed between February 2015 and October 2016 (NYSCEF Doc No 151). The change order states that though plaintiff's base contract calls for a 6 days/week schedule, "[d]ue to areas of work not being available on time and accelerated schedule issued by JDS, [HLI] ownership made the decision to work [its] fitters on premium time to maintain the progress of the project" (*id.*).

Defendants argue that the subcontract entered between plaintiff and JDS bars plaintiff's claim, as it warned that delays in other trades could produce delays in plaintiff's ability to commence certain work, and JDS was given "absolute discretion" to modify the project schedule "without any increase to the Contract Price" (NYSCEF Doc No 134 § 23). Defendants assert that under the contract, plaintiff is only permitted to recover for overtime costs if JDS directs plaintiff to complete the project ahead of schedule. The subcontract provides:

> § 30. <u>Acceleration of Performance</u>. "If Construction Manager shall desire the Work of Contractor hereunder to be performed with greater speed than is herein contracted for, Contractor shall, . . . upon receipt of a written order from Construction Manager, employ overtime labor . . . Direct cost of the premium time for all labor utilized by Contractor in such overtime Work as shown on the time slips checked and approved each day by Construction Manager shall be paid by Construction Manager to Contractor . . .

> No charges or damages for lost productivity or efficiency shall be
> permitted, and Contractor has anticipated the risk of same and
> included all costs associated therewith in the Contract. Price."

*Id.* Defendants also assert that the overtime costs were incurred as a result of plaintiff's inefficiencies and defective work. Finally, defendants claim that the total amount demanded for the purported overtime is merely "a guess" (NYSCEF Doc No 132, 164:16-166:21 [HLI project executive Mike Modica called CO #100 "a placeholder" and the total quoted "was a number [he] just threw out there"]).

Plaintiff argues that defendants' interpretation of the acceleration of performance provision is too narrow because by their logic, "once the dates in the initial Scope of Work are not met . . . any acceleration, even if demanded by JDS, does not warrant additional payment" (NYSCEF Doc No 187). Plaintiff asserts that because paying overtime was necessary due to "an accelerated schedule issued by JDS" (NYSCEF Doc No 151), it should be considered an instance where the work was directed to be performed "with greater speed than is herein contracted for" (NYSCEF Doc No 134 § 30). Plaintiff also argues that, while it did not obtain the required authorizations for the premium overtime, "multiple issues of fact remain with respect to the parties' prior conduct which did not require strict compliance with the terms of the Contract" and which gave plaintiff the impression that it could submit an overtime change order in bulk after the fact (NYSCEF Doc No 187; see also NYSCEF Doc No 129, 221:4-222:23 [Henick testifying that JDS had paid other overtime requests and never asked for daily time slips]). Plaintiff further asserts that as the non-moving party, it does not carry the burden to submit sufficient supporting documentation for CO #100.

The acceleration of performance provision contemplates that JDS will pay for overtime when it has issued a written order directing plaintiff to do so (NYSCEF Doc No 134 § 30 [HLI

shall employ overtime labor "upon receipt of a written order from Construction Manager"]). Plaintiff does not contend that it ever received such an order; rather, CO #100 demonstrates that "*Henick-Lane ownership made the decision* to work [its] fitters on premium time" (NYSCEF Doc No 151 [emphasis added]). The acceleration of performance provision also reflects the expectation that plaintiff will demonstrate the costs "on time slips checked and approved each day by Construction Manager" (NYSCEF Doc No 134 § 30). The purpose of this inclusion is clear; JDS wanted to control any overtime charges incurred. While plaintiff argues that the parties' course of conduct implied that some of these written formalities were unnecessary, as defendants note in their reply, the contract included a "no waiver" clause which explicitly states that "[t]he failure of Construction Manager to insist in any one or more instances upon a strict compliance with any provision of this Agreement, or to exercise any option herein conferred, shall not be construed as a waiver" (*id.* § 31). Here, "the broad 'no waiver' provision of the [subcontract] precluded reliance upon any prior course of conduct" (*River Park Residences, LP v Richman Plaza Garage Corp.*, 2017 NY Slip Op 50569[U], *4 [1st Dept 2017]; *Goldberg v Manhattan Mini Storage Corp.*, 225 AD2d 408, 408 [1st Dept 1996] ["Plaintiff's claim that a prior course of conduct lulled him into a belief that his property was not in danger of being sold is without merit in view of the no-waiver clause in the agreement"]).

Defendants have demonstrated that plaintiff was not employing overtime in response to a written order from JDS to do so, a condition precedent to incurring overtime expenses; nor did plaintiff provide JDS with daily time slips, a condition precedent to collecting overtime expenses. Instead, it submitted a change order for hours accumulated over the course of 20 months. In its opposition, plaintiff failed to raise an issue of fact as to whether it satisfied the

**161465/2019   HENICK-LANE, INC. vs. 616 FIRST AVENUE LLC**
**Motion No.  005**

Page 13 of 14

conditions precedent entitling it to the overtime payments at issue. Accordingly, plaintiff is not entitled to recover the costs associated with CO #100.

## CONCLUSION

Based on the foregoing, it is

ORDERED that defendants' motion is granted and plaintiff is not entitled to recover its delay damages, additional on-site management expenses (CO #252), piping/riser offset expenses (CO #251), or premium overtime costs (CO #100).

20241204154133PGOETZI3A3DE38F85CF466090CAD43C3A8B28B7

| 12/4/2024 | | | |
| DATE | | PAUL A. GOETZ, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |